UNITED STATES of America,
Plaintiff–Appellee,

v.

Ray L. CORONA, Defendant–Appellant.

No. 87–5263.

United States Court of Appeals,
Eleventh Circuit.

July 14, 1988.

Donald I. Bierman, Bierman, Sonnett, Shohat & Sale, P.A., Benedict P. Keuhne, Miami, Fla., for defendant-appellant.

Bruce E. Lowe, Asst. U.S. Atty., Mary K. Butler, Linda Collins Hertz, Sonia Escobio O'Donnell, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before TJOFLAT and HILL, Circuit Judges, and HALL,* District Judge.

ROBERT H. HALL, District Judge:

On December 22, 1986 appellant, Ray L. Corona ("Corona"), was convicted of eighteen violations of the Drug Control Act of 1968, 18 U.S.C. §§ 922(a)(6) and 922(h)(3).[1] Those Code sections, respectively, make it

---

* Honorable Robert H. Hall, U.S. District Judge for the Northern District of Georgia, sitting by designation.

1. The 1986 Amendments to 18 U.S.C. § 922 resulted in § 922(h)(3) being rewritten and the equivalent provision being recodified at § 922(g)(3).

unlawful for a person, in connection with the purchase of firearms, to make a false or fictitious written statement intended or likely to deceive the firearms dealer and for a person who is an unlawful user of or addicted to a controlled substance to receive firearms. In order to prove its case against Corona, the government offered into evidence the redacted treatment records of Corona from the Palm Beach Institute ("PBI"), a private drug and alcohol abuse treatment center in Palm Beach, Florida and the testimony of a private psychiatrist who separately treated Corona. The issues before this court are whether the trial court erroneously admitted into evidence both Corona's PBI treatment records and the testimony of Corona's psychiatrist; whether the evidence was sufficient to support Corona's conviction; whether Corona's conviction should be reversed on grounds of prosecutorial vindictiveness; and whether the trial court erred in failing to give some of Corona's requested jury instructions.

## FACTUAL AND PROCEDURAL BACKGROUND

On six separate occasions between October 1981 and October 1984 Corona purchased a total of nine firearms from the Tamiami Gun Shop in Miami, Florida. On each occasion and for purposes of purchasing each gun, Corona completed a form published by the Bureau of Alcohol, Tobacco and Firearms ("ATF Form 4473") which is designed to identify prospective buyers who are statutorily prohibited from purchasing guns. On each of the nine ATF Forms 4473, Corona answered "no" in response to the question "Are you an unlawful user of, or addicted to marijuana, or a depressant, stimulant or narcotic drug?" At trial, the government sought to prove that Corona's negative responses on the ATF Forms 4473 were false or fictitious in violation of 18 U.S.C. § 922(a)(6) and that, during the three year period Corona purchased guns from Tamiami, he was an unlawful user of or addicted to cocaine in violation of 18 U.S.C. § 922(h)(3).[2]

To prove its case that Corona was addicted to or an unlawful user of cocaine, the government pursued three main avenues at trial.[3] The government called Shelley Phillips, a social acquaintance of Corona's, who testified that each time she and Corona socialized between 1981 and 1983 they ingested cocaine, procured by Corona, approximately twelve times per evening. The government also called as a witness Dr. Roberto Ruiz, a psychiatrist who, in his private practice, treated Corona on a weekly basis from August 1980 through January 1981.

During treatment, Corona confided in Dr. Ruiz that he suffered from extensive cocaine use which progressed from an initial social use. Although Corona and Dr.

---

**2.** The statute prohibits a person who is *either* an unlawful user of *or* addicted to a controlled substance from purchasing firearms. In the instant case the indictment charges Corona with being an unlawful user of *and* addicted to cocaine when he received firearms. Although the indictment differs in this respect from the statute, we agree with the Fifth Circuit that "use of the conjunctive form in the ... indictment, through inadvertence or otherwise, does not change the essential elements of the offense or add to the government's burden of proof." *U.S. v. Harrelson*, 705 F.2d 733, 736 (5th Cir.1983). Thus, the government was only required to show that throughout the period when Corona was purchasing guns from Tamiami and filling out the ATF Forms 4473 he was addicted to or an unlawful user of cocaine, a controlled substance. Although the government was not required to prove both unlawful use of and addiction to cocaine, the government offered evidence at trial on the issue of Corona's alleged

addiction. In all likelihood the government chose to attempt to prove Corona's addiction in view of the fact that unlawful use is arguably a subset of addiction. The government, being required to prove either addiction or unlawful use, apparently sought to prove the more inclusive element out of an abundance of caution and with knowledge that evidence which might fail to prove addiction might support a finding of unlawful use.

**3.** In his brief, appellant argues that the grand jury indictment should be dismissed because the grand jury allegedly erroneously considered the testimony of Corona's psychiatrist and Corona's PBI drug treatment records. During oral argument, however, Corona's counsel conceded that the only issue this court need address is whether Corona's conviction should be reversed and, regardless of the evidence before the grand jury, the relevant inquiry is whether reversible error was committed by the trial judge.

Ruiz did not discuss the specific amount of cocaine Corona ingested, Dr. Ruiz learned that Corona used cocaine quite often, at times on a daily basis, and may have spent as much as $10,000 per month to purchase cocaine. Dr. Ruiz observed that Corona was able to stop his cocaine use for periods of time and concluded that Corona, rather than being an addict, was a chronic cocaine user.

The government's third offer of proof of Corona's addiction to or unlawful use of cocaine was Corona's PBI treatment records. On two occasions, for six weeks in 1982 and for three days in 1983, Corona entered PBI for chemical substance therapy and treatment. PBI kept written records, prepared by Corona's therapist, nurses and other employees of PBI, of Corona's admissions and discharges, statements, treatment, and evaluations of his progress. Although Corona's therapist at PBI was unaware of whether Corona described himself as an addict, the therapist and others at PBI considered Corona to be addicted to cocaine.

In presenting his case, Corona sought to prove that he was neither addicted to nor an unlawful user of cocaine at the times he purchased the guns at issue. Corona did not dispute that he purchased the firearms or that he filled out and signed the ATF Forms 4473. Corona called three lay witnesses, business and social acquaintances of his, who testified that he was a dedicated banker who often worked long hours and performed complex transactions and that he never appeared unduly fatigued, out of control or a danger to the public safety and welfare.

The defense also called two witnesses who were qualified as experts in the field of chemical dependency. Both expert witnesses offered testimony contrary to that offered by Corona's PBI therapist. The defense expert witnesses testified that cocaine was not considered addictive during the years in question and one expert opined that Corona was able to control his cocaine use and was not an addict. Finally, Corona called a former BATF Special Agent who testified that the BATF published materials provided to firearms dealers do not define the terms "unlawful user of or addicted to" a controlled substance as used on the ATF Forms 4473.

Prior to striking the jury, the trial court held a hearing to consider, among other issues, the questions of the propriety of admitting the PBI records and allowing the testimony of Dr. Ruiz. The court denied Corona's motion to exclude the testimony of Dr. Ruiz finding that no psychotherapist-patient privilege exists in Eleventh Circuit criminal actions. The court also denied Corona's motion to suppress the PBI records. In so ruling, however, the court severely limited admission of the 130 page file, allowing only some 13 pages into evidence, in accordance with the Federal Rules of Evidence and the Drug Abuse Confidentiality Statute, 42 U.S.C. § 290ee–3, and its implementing regulations, 42 C.F.R. § 2.61 *et seq.* On December 22, 1986, the jury returned a verdict of guilty on all 18 counts of the indictment. After denying Corona's post-trial motions, the court sentenced Corona to twelve months imprisonment followed by five years of probation.

## DISCUSSION

### 1. *Propriety of Admitting Drug Treatment Records*

Corona contends the trial court committed reversible error by admitting into evidence part of his PBI treatment records. Although the trial judge redacted the records and allowed into evidence approximately 13 of 130 pages, Corona argues that the Drug Abuse Confidentiality Statute, 42 U.S.C. § 290ee–3, governs the disclosure of drug treatment records and that no part of the PBI records should have been admitted absent the district court's strict compliance with the procedures set forth in § 290ee–3 and its implementing regulations, 42 C.F.R. § 2.61 *et seq.*

The section of the Public Health and Welfare Title to which Corona refers provides in pertinent part that "Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any drug abuse prevention function ... [shall] be

confidential and be disclosed only ... under the circumstances expressly authorized" under the Statute. 42 U.S.C. § 290ee–3(a). The Statute specifically allows the disclosure of drug treatment records pursuant to a court order even in the absence of a patient's consent authorizing the disclosure of his records. *Id.* § 290ee–3(b)(2)(C). Before drug treatment records may be disclosed pursuant to a court order, however, the court must assess good cause for the disclosure by "weigh[ing] the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services." *Id.*

Although the confidentiality statute provides only that a court must assess good cause before granting a disclosure application, the statute's implementing regulations, 42 C.F.R. § 2.61 *et seq.*, set forth specific procedures a court should follow to determine the propriety of disclosing drug treatment records.[4] Corona argues that a court may not disclose confidential drug treatment records for purposes of investigating or prosecuting a patient for a crime unless the court has made findings that the criteria of § 2.65 have been met. We agree and we do not dispute Corona's contention that the trial court below failed to make findings that the criteria were met in this case. We nonetheless decline to reverse Corona's conviction finding that a reasonable trial judge could have found that all the criteria were met.

Whether the district court properly admitted a portion of Corona's PBI records is a mixed question of law and fact which requires this court to independently apply legal principles to the trial court's findings of facts. We must, therefore, defer to the district court's findings of basic, historical facts of the case and independently evaluate whether, pursuant to the confidentiality statute and implementing regulations, portions of Corona's PBI records should have been disclosed at trial. *Adams v. Balkcom*, 688 F.2d 734, 739 (11th Cir.1982).

Under 42 C.F.R. § 2.65(c) (1986 edition), a court may authorize disclosure of confidential drug treatment records for the purpose of conducting an investigation of or a prosecution for a crime of which the patient is suspected *only* if the court finds that *all* of four enumerated criteria are met.[5] The criteria set forth in § 2.65 are:

(1) The crime was extremely serious, such as one involving kidnapping, homicide, assault with a deadly weapon, armed robbery, rape, or other acts causing or directly threatening loss of life or serious bodily injury....

(2) There is a reasonable likelihood that the records in question will disclose material information or evidence of substantial value in connection with the investigation or prosecution.

(3) There is no other practicable way of obtaining the information or evidence.

(4) The actual or potential injury to the physician-patient relationship in the pro-

---

**4.** The trial court below conducted a hearing on Corona's motion to suppress his PBI records. In considering Corona's motion, the court referred to the implementing regulations as revised October 1, 1986. The regulations were revised again as of October 1, 1987 altering some of the premises upon which the trial court based its conclusions. The trial court limited the number of pages disclosed in compliance with 42 C.F.R. § 2.63(a) which, as of October 1986, required that disclosure be limited to objective data. The 1987–1988 version of § 2.63 does not limit disclosure of treatment records to objective material. The October 1987 edition of the regulations also differs from the prior year's edition in that the current edition clarifies that § 2.64 pertains to disclosures for *noncriminal* purposes whereas § 2.65 sets forth criteria for orders authorizing disclosures for use in criminally investigating or prosecuting patients.

These changes do not affect this appeal, however, because § 2.65 of the regulations, the section Corona refers to as crucial to this appeal, was not materially revised in the October 1987 regulations.

**5.** The confidentiality statute authorizes the Secretary to issue regulations establishing "procedures and criteria" to govern the issuance and scope of court disclosure orders as "are necessary or proper to effectuate the purposes of [the statute], to prevent circumvention or evasion thereof, or to facilitate compliance therewith." 42 U.S.C. § 290ee–3(g). Thus, it appears Congress intended courts, in ruling on applications for disclosure of confidential drug treatment records, to comply with the implementing regulations found at 42 C.F.R. § 2.61 *et seq.*

gram affected and in other programs similarly situated, and the actual or potential harm to the ability of such programs to attract and retain patients, is outweighed by the public interest in authorizing the disclosure sought.[6]

42 C.F.R. § 2.65(c) (10–1–86 Edition).

Corona argues on appeal that the district court failed to make specific findings that all four criteria were met in this case. He points out that the trial judge in essence adopted the findings of another district court which had authorized the disclosure of his PBI records to the grand jury. The latter judge, however, found only that the public's interest in disclosure of the records outweighed the harm to the physician-patient relationship and that the crime charged in this case was serious, as opposed to "extremely serious." Corona contends that his conviction must be reversed because the trial court failed to reach its own findings that all four criteria were met and that, in any event, the crime with which he was charged was not "extremely serious."

In conducting a *de novo* review of this case, applying the legal principles set forth in the confidentiality statute and regulations to the facts as found by the trial court, we find the district judge did not commit reversible error in admitting a portion of Corona's drug treatment records into evidence. Although the crime charged in the instant case is dissimilar to the crimes set forth in § 2.65(c)(1), those enumerated crimes are illustrative rather than exhaustive. *United States v. Hopper,* 440 F.Supp. 1208, 1210 (N.D.Ill.1977).[7] We believe a reasonable judge could find that the purchase of nine firearms by a person addicted to a controlled substance is "ex-

tremely serious" within the meaning of the implementing regulations.

Because the government chose to show that Corona was addicted to cocaine and purchased firearms in violation of the Drug Control Act of 1968, it would not have been error for a trial court to find that there was no other practicable way of obtaining the evidence and that the records contained evidence of substantial value in connection with the prosecution. Finally, because a reasonable trial court could find the crime charged against Corona to be "extremely serious" as contemplated by § 2.65, no error would have resulted from a finding that the injury to the physician-patient relationship or to the ability of drug treatment programs to attract patients was outweighed by the public interest in gaining disclosure of the records.

Thus, although the trial court in the instant case did not make specific findings conforming to 42 U.S.C. § 290ee–3(b)(2)(C) and 42 C.F.R. § 2.65(c), we find on *de novo* review that all four criteria of § 2.65 were met and that good cause existed for the limited disclosure of Corona's PBI records at trial. The district court's decision to deny Corona's motion to suppress and to admit into evidence a small portion of Corona's PBI drug treatment records did not constitute reversible error.

2. *Propriety of Admitting Psychotherapist Confidences*

■ Corona argued before both the trial court and this court that the confidences conveyed by him to Dr. Ruiz during his treatment sessions were privileged and should not have been disclosed at trial. Corona acknowledges that in this circuit no physician-patient privilege exists in federal

---

**6.** In the October 1, 1987 edition of the regulations, § 2.65 was rewritten and the criteria seemingly relaxed. Although the language of the section is modified in the current editions of the regulations, the criteria remain essentially the same. Moreover, in this appeal we review the decision of the district court reached while the October 1, 1986 edition of the regulations was still in effect.

**7.** The wording of the October 1, 1987 edition of § 2.65 lends support to the conclusion that the

list of crimes enumerated in the section is provided only as a guide to the determination of what offenses are extremely serious. The current regulation provides that records may be disclosed if "[t]he crime involved is extremely serious, such as one which causes or directly threatens loss of life or serious bodily injury including homicide, rape, kidnapping, armed robbery, assault with a deadly weapon, and child abuse and neglect." 42 C.F.R. § 2.65(d)(1) (10–1–87 Edition).

criminal trials. *See* Rule 26, Fed.R. Crim.P.; Rule 501, Fed.R.Evid.; *United States v. Harper,* 450 F.2d 1032, 1035 (5th Cir.1971).[8] Nonetheless, Corona urges this court to distinguish between a *psychotherapist*-patient relationship and a *general physician*-patient relationship and to follow the Sixth Circuit in adopting a psychotherapist-patient privilege in criminal trials.[9]

This circuit has declined to recognize a psychotherapist-patient privilege in federal criminal trials. In *United States v. Lindstrom,* 698 F.2d 1154 (11th Cir.1983), and *United States v. Meagher,* 531 F.2d 752 (5th Cir.), *cert. denied,* 429 U.S. 853, 97 S.Ct. 146, 50 L.Ed.2d 128 (1976), the courts reasoned that evidentiary privileges in federal criminal cases are governed by common law unless modified or expanded by an Act of Congress, the Constitution or rules prescribed by the Supreme Court and that neither common law nor statutory law provides for any type of physician-patient privilege. The rationale of both the *Lindstrom* and *Meagher* courts is no less sound today than when those decisions were reached. Moreover, the Supreme Court has stated that privileges "are not lightly created nor expansively construed, for they are in derogation of the search for the truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). For these reasons, we reaffirm earlier rulings in this Circuit that no physician (including psychotherapist)-patient privilege exists in federal criminal trials.

### 3. *Other Claims on Appeal*

In addition to arguing that the trial court committed reversible error by admitting into evidence Corona's PBI records and the testimony of Dr. Ruiz, Corona contends his conviction should be reversed on the grounds of insufficiency of the evidence, prosecutorial vindictiveness and failure of

the district court to grant some of Corona's requested jury instructions. These claims are meritless and warrant little discussion.

■ Corona argues that the government failed to show either that he was addicted to or an unlawful user of cocaine. Corona appears to suggest that the government was required to show that he was actually using or addicted to cocaine at the exact moment he purchased the firearms in question. Nowhere does the Drug Control Act of 1968 require such a showing and the government did offer evidence tending to show Corona was either an unlawful user of or addicted to cocaine during the years in question. In addition, the government presented sufficient evidence to prove Corona had the requisite knowledge of his alleged addiction or status as an unlawful user of cocaine at the times he signed the ATF Forms 4473. Viewing the evidence in the light most favorable to the government and accepting reasonable inferences and credibility choices by the fact-finder, we find the government presented sufficient evidence to support Corona's conviction. *United States v. Sanchez,* 722 F.2d 1501, 1505 (11th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984).

■ Corona's claim of prosecutorial vindictiveness is founded on the government's timing in seeking an indictment in this case. Although the instant indictment was brought during Corona's appeal of a superseding racketeering indictment brought against him following a mistrial in the racketeering action, there is no evidence the indictment in the instant action was brought as a result of vindictiveness. Indeed, the government began investigating the possibility that Corona had violated the Gun Control Act prior to the mistrial and Corona's appeal of the superseding indictment. Corona's claim of vindictiveness must fail. The prosecutor in the instant action did not bring "more serious charges

---

**8.** In *Bonner v. Prichard,* 661 F.2d 1206 (11th Cir.1981), this court adopted as precedent all former Fifth Circuit cases submitted or decided prior to October 1, 1981.

**9.** In *In re Zuniga,* 714 F.2d 632 (6th Cir.1983), the Sixth Circuit held that a "psychotherapist-pa-

tient privilege is mandated by 'reason and experience'." *Id.* at 639 (quoting Rule 501, Fed.R. Evid.). The *Zuniga* court declined to follow this court which had previously held that no psychiatrist-patient privilege exists in federal criminal trials.

following the defendant's exercise of procedural rights ..." *United States v. Spence*, 719 F.2d 358, 361 (11th Cir.1983) and Corona failed to show "actual vindictiveness as opposed to mere apprehension of vindictiveness...." *United States v. Taylor*, 749 F.2d 1511, 1513 (11th Cir.1985).

Finally, Corona contends the trial court committed reversible error by denying some of his requested jury instructions. A trial court's refusal to give a requested charge constitutes reversible error only if "(1) the instruction is substantively correct; (2) it was not substantially covered in the charge actually delivered to the jury; and (3) the failure to give it seriously impaired the defendant's ability to present an effective defense." *United States v. Gold*, 743 F.2d 800, 819 (11th Cir.1984), *cert. denied*, 469 U.S. 1217, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985). A trial court is not bound to use the exact words and phrasing requested by defense counsel in his charge and this court, in reviewing the charge, "need only ascertain whether the charge, when viewed as a whole, fairly and correctly states the issues and law...." *United States v. Russell*, 717 F.2d 518, 521 (11th Cir.1983). In the instant case, the district court correctly denied Corona's requests to charge which had no legal foundation and the entire charge given by the court adequately covered Corona's requested charges which the court failed to give.

## CONCLUSION

After reviewing the record and the law, we find that the trial court did not err in admitting into evidence portions of Corona's PBI drug treatment records or in allowing Dr. Ruiz, Corona's psychotherapist, to testify. We further conclude that the evidence was sufficient to support Corona's conviction, Corona made no showing of prosecutorial vindictiveness and the district court did not err in denying some of Corona's requested jury instructions. Corona's conviction is AFFIRMED.