UNITED STATES of America, Appellee,

v.

Joseph Louis WASHINGTON, Appellant.

No. 92–2650.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 16, 1993.

Decided May 3, 1993.

Rehearing and Rehearing En Banc Denied
June 15, 1993.

Paul E. Lacy, Minneapolis, MN, argued (Paul E. Lacy and Matthew J. Goggin, on the brief), for appellant.

Carol Ann Needles, Minneapolis, MN, argued (Thomas B. Heffelfinger and Carol A. Needles, on brief), for appellee.

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Joseph Louis Washington was convicted of being a felon in possession of a firearm pursuant to 18 U.S.C. § 922(g)(1) and received a 264–month armed career criminal sentence pursuant to 18 U.S.C. § 924(e)(1) and U.S.S.G. § 4B1.4. Washington appeals his conviction. We affirm.

I.

On December 7, 1991, Brian Nystrom, a parking lot attendant, observed an individual walking around the parking lot and looking into cars in a suspicious manner. As Nystrom approached the individual, the individual ducked down and ran away. Nystrom called 911, reported what he saw, and described the individual as a tall, black male, wearing a dark, full length starter coat, and a dark, ribbed stocking cap. A short time later, Nystrom saw the same individual across the street again looking into some cars and then go into an alley behind the Glam Slam Nightclub. Again Nystrom called 911 and described what he had seen.

Two of the police officers who responded to the radio report of a car prowler approached the alley and saw an individual who matched the description of the suspect. This individual, who was later identified as Washington, immediately started running down the alley towards the rear of the Glam Slam Nightclub. Following him in the police squad car, the officers observed Washington throw an object with a black strap attached into a snow bank near a loading dock. When the officers reached the loading dock, they continued the chase on foot. As Washington went around a corner to an adjoining alley, a third officer was there. This officer arrested Washington, handcuffed him, patted him down for weapons and then went to the location where the other two officers had seen Washington throw something and found a loaded Stevens (Savage Arms) Model 325(b) .30–30 caliber bolt-action rifle with a long black shoulder strap attached. Further search of Washington revealed two live rounds of .30–30 ammunition and some miscellaneous papers in his pocket.

Washington contended at trial that on the night in question, he had been drinking with some friends until 9:00 p.m. when he took the bus downtown. Washington testified that he then ran into an acquaintance, "Gemini," who was also wearing a long black coat and a black Raider's cap. Washington stated that Gemini handed him a drink and they walked into the alley behind the Glam Slam Nightclub. Washington claims that Gemini gave him a set of keys which Washington put in his pocket. Washington further testified that when the police car arrived, both Gemini and he fled but he slipped in the snow by the loading dock. Washington stated that as he regained his balance, he grabbed the straps on his coat and then ran around the corner where he was arrested. The officers testified that they saw only one person.

## II.

Washington's first issue on appeal is that the trial court erred in denying his motion for mistrial based on improper language contained in the indictment. The indictment that was filed with the court and read by the district court judge at the start of the trial stated the following:

The United States grand jury charges that:

### Count I

[18 U.S.C. §§ 922(g)(1) and 924(e)(1); Felon with three or more prior convictions **for crimes of violence** in possession of a firearm]

On or about December 7, 1991, in the State and District of Minnesota, the defendant, Joseph Louis Washington, having been previously convicted of two simple robberies and two aggravated . robberies, all crimes punishable by imprisonment for a term exceeding one year, knowingly possessed in and affecting commerce a firearm, that is one loaded Stevens (Savage Arms), Model 325B, .30/30 caliber bolt-action rifle, no serial number; in violation of Title 18 United States Code, Sections 922(g)(1) and 924(e)(1).

The copy of the indictment that the government had supplied Washington did not include the language "for crimes of violence" highlighted above. The first time Washington was aware of that language in the indictment was when it was read to the jury by the trial judge at the start of the trial. Washington moved for a mistrial and to strike the language from the indictment. The district court [1] denied the motion for mistrial but excluded the objectionable language from the indictment in its final instructions to the jury.

Washington argues that the indictment was not sufficient to apprise him of that which he was 'convicted. An indictment is sufficient if it fairly informs the accused of the charge against him and allows him to plead double jeopardy as a bar to future prosecutions. *United States v. Mastrandrea*, 942 F.2d 1291, 1293 (8th Cir.1991) (citations

omitted), *cert. denied*, —— U.S. —— , 112 S.Ct. 973, 117 L.Ed.2d 138 (1992). The indictment in this case was certainly sufficient. It contained specific references to the relevant statutory section, 18 U.S.C. § 922(g)(1), for the substantive crime of being a convicted felon in possession of a firearm and charged all the elements of the substantive charge.

In addition to charging all of the elements of the substantive crime, the indictment also contained the necessary elements for sentence enhancement. Section 924(e)(1) provides for a mandatory minimum 15–year sentence for a defendant convicted of § 922(g) who, has three prior convictions for a "violent felony." 18 U.S.C. § 924(e)(1). "Violent felony" is defined in § 924(e)(2)(B). Section 4B1.4 of the Sentencing Guidelines applies to anyone who is subject to § 924(e)(1). Section 924(e)(1)'s predecessor was declared to be a sentence enhancement statute rather than a statute creating a separate offense. *United States v. Rush*, 840 F.2d 574, 578 (8th Cir.) (en banc), *cert. denied*, 487 U.S. 1238, 108 S.Ct. 2908, 101 L.Ed.2d 940 (1988). "Allegations in an indictment that are not necessary to establish a violation of the statute in issue are mere surplusage and may be disregarded if the remaining allegations are sufficient to charge a crime." *Mastrandrea*, 942 F.2d at 1293 (citations omitted). The phrase "for crimes of violence" was not necessary to state the substantive charge under § 922(g)(1) and was therefore surplusage in the indictment. While the objected to language is surplusage to the substantive charge, its inclusion in the indictment serves a valid and useful purpose in that it gives notice to the defendant from the start that the government intends to seek the enhanced sentence if the defendant is convicted. Whether or not a mistrial is required if that same language is disclosed to the jury is the fundamental issue in this case.

Washington asserts that the court should have granted a mistrial because the surplusage contained in the indictment was prejudicial. "The grant or denial of the motion for mistrial lies within the sound discretion of

---

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

the district court and may only be reversed on a showing of an abuse of discretion." *United States v. Boykins,* 966 F.2d 1240, 1244 (8th Cir.1992) (citation omitted). Although the district court did not give a curative instruction following its initial reading of the indictment nor grant the motion for mistrial, the court did not include the language "for crimes of violence" when it gave the final instructions to the jury.

We find that the district court did not abuse its discretion and affirm its denial of the motion for mistrial. First, the prejudice resulting from the surplus language was limited. One element of § 922(g)(1) requires the government to establish that the defendant is a previously convicted felon. To prove this element, the government may put forth evidence of multiple felony convictions even though proof of one is sufficient. *United States v. Savage,* 863 F.2d 595, 599 (8th Cir.1988), *cert. denied,* 490 U.S. 1082, 109 S.Ct. 2105, 104 L.Ed.2d 666 (1989). The government specifically set forth in the indictment Washington's convictions upon which it would rely. Two of these convictions were designated "simple robberies," two were designated "aggravated robberies." Washington did not object to this portion of the indictment, but rather only objected to the characterization of these crimes as "crimes of violence." The prejudice from the phrase "crimes of violence," therefore, exists only to the extent that a jury might be more biased against a person previously convicted of "crimes of violence" than a person previously convicted of multiple robberies including two "aggravated robberies." Most citizens would think a one-time robber to be a violent person, and a two-time aggravated robber to be all the more so. Hence, the extent of the prejudice is minimal.

More importantly, however, the inclusion of such surplusage is harmless when the evidence against the defendant is overwhelming. *See United States v. Quintero,* 872 F.2d 107 (5th Cir.1989), *cert. denied,* 496 U.S. 905, 110 S.Ct. 2586, 110 L.Ed.2d 267 (1990); *United States v. Lowe,* 860 F.2d 1370 (7th Cir.1988), *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989); *United States v. Pirovolos,* 844 F.2d 415 (7th Cir.),

*cert. denied,* 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988). The officers chasing Washington clearly saw him drop something with a black strap into the snow bank in the well-lit alley although they could not see what the item was when it was dropped. The rifle was found in the exact spot indicated by the officers. Furthermore, bullets for the rifle (rather than a set of keys as claimed by Washington) were in Washington's pocket. Washington points out that the police did not find any fingerprints on the rifle or ammunition and asserts that he has an explanation for the events of that evening. Like the experienced trial judge who found the defendant's trial testimony to be "totally unbelievable," we are not persuaded and find the evidence against Washington to be overwhelming. *See* sentencing transcript, at 8. Therefore, we conclude the inclusion of the phrase "for crimes of violence" in the initial reading by the district court judge was harmless in this case.

## III.

Washington next contends that the prosecutor's demonstration during final argument was prosecutorial misconduct. At the beginning of the government's closing argument, the prosecutor addressed the jury wearing a trench coat with the rifle in question strapped underneath. He then demonstrated how one could use the clips on the strap to remove the rifle without having to take off the overcoat. Washington did not object to this demonstration at trial. Consequently, we review only for plain error. *United States v. Wilson,* 930 F.2d 616, 619 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 208, 116 L.Ed.2d 167 (1991). We will reverse for plain error only if the prosecutor's conduct "prejudices the substantial rights of the defendant and would result in a miscarriage of justice if left uncorrected." *Id.* (citations omitted). We need not determine whether the prosecutor's demonstration constituted prejudicial misconduct because given the overwhelming evidence of Washington's guilt presented to the jury, the prosecutor's alleged unobjected to error did not result in a miscarriage of justice. *See id.*

## IV.

For the reasons stated above, we affirm the conviction of Washington.