UNITED STATES of America, Plaintiff–Appellee,

v.

Chad Everette GRADY, Defendant–Appellant.

No. 92–3692.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1993.

Decided July 1, 1993.

Mark C. Meyer, Cedar Rapids, IA, argued, for defendant-appellant.

Richard Louis Murphy, Cedar Rapids, IA, argued, for plaintiff-appellee.

Before WOLLMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Chad Everette Grady was found guilty of possession with intent to distribute crack cocaine and conspiracy to possess and distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(b)(iii), and 846. Grady appeals both his conviction and sentence and we affirm.

## I. BACKGROUND

In the fall of 1991, Danny Mosley agreed to cooperate with law enforcement officials in their investigation of drug activity in Fort Dodge, Iowa. On November 4, 1991, Mosley contacted Chad Grady and arranged to purchase twelve rocks of crack cocaine. Mosley purchased the crack cocaine at Brown's Cafe with $1,000 in marked currency. The next day Mosley contacted Grady and arranged to make another purchase of cocaine at Brown's Cafe. Mosley was fitted with a transmitting device, given marked currency, and told to say "chili dog" when the sale was complete. Mosley and Grady completed the sale in a rest room and Mosley said "chili dog" to alert the law enforcement officials. As the officers entered the cafe, they found Grady exiting the women's rest room. As one officer entered the rest room and recovered a baggie of crack cocaine from the toilet, another officer searched Grady and found $637 in cash, which included two marked $100 bills.

1. The Honorable Donald E. O'Brien, Senior Dis-

On November 14, 1991, Grady was charged in a two count indictment with conspiracy to distribute and possess with the intent to distribute five grams or more of crack cocaine, and possession with intent to distribute five grams or more of crack cocaine. On February 13, 1992, the jury returned verdicts of guilty on both counts. The district court[1] sentenced Grady to two 151 month concurrent sentences and four years of supervised release. Grady appeals his conviction and sentence.

## II. DISCUSSION

### A. *Fair trial*

Grady first argues he was denied a fair trial because the district court refused to appoint new counsel three days before the start of his trial. He contends he was denied effective assistance of counsel because his trial counsel failed to interview witnesses and prepare his defense. It is well-established in this circuit that ineffective assistance of counsel claims generally may not be raised on direct appeal, but are properly raised in collateral post-conviction proceedings where the record can be fully developed. *United States v. Sanchez,* 927 F.2d 376, 378 (8th Cir.1991) (per curiam). Thus, we only address the assistance of counsel claim as it directly relates to the court's decision not to appoint new counsel. On February 7th, 1992, a magistrate judge conducted a hearing and asked Grady to state the reasons why he should be appointed new counsel. Grady stated that his counsel failed to arrange for the appearance of two witnesses at his bond revocation hearing and had failed to interview and subpoena at least three witnesses. Grady's attorney stated that he asked Grady and his mother for any names and addresses of potential witnesses, but he was not given the names of any individuals who could testify on Grady's behalf. The magistrate determined that Grady had not provided his counsel with any solid reason to believe that those individuals would present any exculpatory evidence.

Whether to grant a defendant's motion to substitute counsel "is a matter committed to the sound discretion of the district

trict Judge for the Northern District of Iowa.

court," *United States v. Swinney*, 970 F.2d 494, 499 (8th Cir.), *cert. denied*, ⸺ U.S. ⸺, 113 S.Ct. 632, 121 L.Ed.2d 563 (1992), and "[t]o warrant substitute counsel, a defendant must show justifiable dissatisfaction with appointed counsel." *United States v. Sayers*, 919 F.2d 1321, 1323 (8th Cir.1990). This includes a "conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir.1991). Our review of the record indicates the court was clearly acting within its discretion in denying Grady's motion for substitution of counsel. The record indicates that Grady's counsel asked Grady and his mother for the names of alibi witnesses, and counsel subpoenaed witnesses to testify on Grady's behalf at trial. Although Grady expressed dissatisfaction with his counsel's trial preparation strategies, the record does not show an irreconcilable conflict or complete breakdown in communication that mandates substitution of counsel. *Smith*, 923 F.2d at 1320.

■■■ Second, Grady argues he was denied a fair trial because he appeared before the jury in jail clothing. Because Grady did not object and preserve the issue for appeal, we must review Grady's claim only for plain error. *United States v. Olano*, ⸺ U.S. ⸺, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993); *United States v. Page–Bey*, 960 F.2d 724, 727 (8th Cir.1992). Under this standard, we do not grant relief unless the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 113 S.Ct. at 1770 (citation omitted). The critical determination is whether the defendant was compelled to stand trial in identifiable prison attire. *Estelle v. Williams*, 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126 (1975). The record indicates that Grady's attorney contacted Grady's mother and asked her to bring civilian clothes to the courtroom on the day of jury selection; Grady's mother did not bring the clothes and Grady appeared before the jury in an orange jail jumpsuit. These facts do not suggest that Grady was forced to stand trial in jail clothing. The trial court attempted to arrange for Grady to wear civilian clothing during jury selection, and Grady appeared before the jury in civilian clothing for the rest of the trial. Most importantly, Grady did not object to being tried in jail clothes and this negates a claim that he was compelled to stand trial in jail clothing. *Id.* at 513, 96 S.Ct. at 1697.

■■■ Third, Grady contends he was denied a fair trial because the court erred in permitting government witness Chris Mosley to consult with his attorney on the witness stand. As a preliminary matter, we note that Grady failed to preserve this issue below so our review is for plain error. *Olano*, 113 S.Ct. at 1776; *Page–Bey*, 960 F.2d at 727. Grady argues the dramatic circumstances surrounding Mosley's testimony unfairly emphasized the prejudicial effect of Mosley's testimony that Grady sold drugs. We disagree. Once Mosley unexpectedly announced that he was reluctant to testify against Grady and wanted out of his plea agreement with the government, the court called a recess and consulted with both parties. The court suggested that Mosley be allowed to confer with his counsel, and Grady's counsel neither objected nor asked for a mistrial. The district court has discretion in controlling the manner and order of interrogation during a trial, *United States v. DeLuna*, 763 F.2d 897, 911 (8th Cir.), *cert. denied sub nom*, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985), and the court made every effort to minimize the prejudicial impact of Mosley's change in testimony. Thus, we find no plain error warranting reversal. *Olano*, 113 S.Ct. at 1770.

■■■ Finally, Grady argues the government committed reversible error when, during the questioning of a defense witness, the government asked the witness whether his clothing signified he was a member of a gang. The prosecutor's objectionable question came at the conclusion of the government's direct examination of a witness who had testified about Grady's arrest at Brown's Cafe. Grady argues the question was irrelevant and highly prejudicial. The government contends the question was relevant because it related to the conspiracy charge and the relationship between Grady and the witness. "Reversible error premised on prosecutorial

misconduct may be established where: (1) the prosecutor's remarks are improper; and (2) such remarks 'prejudicially affected the defendant's rights so as to deprive the defendant of a fair trial.'" *United States v. Neumann,* 887 F.2d 880, 886 (8th Cir.1989), *cert. denied,* 495 U.S. 949, 110 S.Ct. 2210, 109 L.Ed.2d 536 (1990) (quoting *United States v. Hernandez,* 779 F.2d 456, 458 (8th Cir.1985)). Again, we review Grady's claim of prosecutorial misconduct in this case for plain error because Grady did not object to the line of questioning at trial. *Olano,* 113 S.Ct. at 1770. The question concerning the witness' clothing and possible gang affiliation, and the witness' negative response did not implicate Grady in any way. We find the question did not prejudice Grady's rights to the extent that he was denied a fair trial, and we find no plain error upon which to reverse the conviction.

### B. *Sentencing*

■■■■ The district court calculated Grady's base offense level at 32 based on a finding that he distributed approximately 2 ounces of crack cocaine. Grady argues the court erred in its determination of the amount of crack cocaine attributable to him and the court's findings were not specific enough to provide a basis for review. In determining the amount of drugs involved in the offense, we must accept the court's factual findings unless they are clearly erroneous. *United States v. Lawrence,* 915 F.2d 402, 406 (8th Cir.1990). In this case the district court's quantity determination was based largely on the testimony of Chris Mosley. Grady claims Mosley's testimony was contradictory, unspecific about dates and amounts of cocaine, and failed to establish by a preponderance of the evidence that Grady distributed over two ounces of crack cocaine. After considering the amount of cocaine seized by law enforcement officials and Mosley's testimony at trial and at sentencing, the court found that the quantity of cocaine was at least 56.7 grams of cocaine, or approximately 2 ounces of crack cocaine. The court detailed its findings concerning the amount of cocaine and set forth the specific reasons why it determined at least two ounces of crack cocaine were attributable to Grady.

We find that Mosley's testimony adequately supports the trial court's determination and the court's finding was not clearly erroneous. *Id.*

■■■■ Grady's final contention is that the district court erred in enhancing his base offense level under U.S.S.G. § 3C1.1 for willfully obstructing or impeding judicial proceedings. A district court's findings in support of the enhancement are reviewed for clear error, and a court's findings as to the credibility of a witness are "virtually unreviewable on appeal." *United States v. Adipietro,* 983 F.2d 1468, 1479 (8th Cir.1993) (citation omitted). The court enhanced Grady's sentence by two levels based on its finding that Grady and others under his control threatened a government witness, Danny Mosley, while Grady was out on bail. At the bond revocation hearing, Grady was allowed to present and cross-examine witnesses. Mosley testified that Grady returned to Fort Dodge and threatened to kill him because he was a government witness. Based on the testimony at the hearing, the court revoked Grady's bond. At sentencing the court stated that although there was conflicting testimony about the threat, a two level enhancement was appropriate because a threat was made. Upon review of the record, we cannot say the court's finding was clearly erroneous. *Id.*

### III. CONCLUSION

For the reasons set forth above, we affirm the district court.