UNITED STATES of America, Plaintiff–Appellee,

v.

Wesley Anthony McINTOSH, Defendant–Appellant.

No. 93–2366.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1994.

Decided May 12, 1994.

Counsel who presented argument on behalf of the appellant was Robert Thomas, St. Louis, MO.

Counsel who presented argument on behalf of the appellee was Larry H. Ferrell, St. Louis, MO.

Before LOKEN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and KYLE *, District Judge.

JOHN R. GIBSON, Senior Circuit Judge.

Wesley Anthony McIntosh appeals his conviction for distribution of marijuana in violation of 21 U.S.C. § 841(a)(1) (1988), possession of a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1), and possession of a firearm by an unlawful drug user in. violation of 18 U.S.C. § 922(g)(3). McIntosh argues the district court[1] erred by: (1) allowing the government to show the jury a gun similar to the one he allegedly possessed; (2) overruling his motion for acquittal based on the indictment; (3) erroneously instructing the jury; and (4) refusing to depart downward from the applicable sentencing guidelines. We reject McIntosh's arguments, and affirm the convictions and sentence.

In December 1991, a confidential informant, Todd Townsend, told Officer Clifford Hodge of the Poplar Bluffs, Missouri police force that he knew McIntosh was selling

---

* The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

marijuana on a regular basis. He also said McIntosh had been armed with a .357 magnum gun on three prior occasions when Townsend purchased marijuana from him. Subsequently, Townsend and Hodge arranged to meet McIntosh at his apartment in New Madrid, Missouri to purchase marijuana. During the drug purchase Hodge noticed McIntosh was wearing what Hodge believed was a Smith & Wesson .357 magnum revolver in a holster. Hodge purchased approximately one ounce of marijuana from McIntosh that evening, but did not arrest him. On December 30, 1991, another officer visited McIntosh at his home and saw a shoulder holster and several .357 caliber rounds. On that same day, New Madrid police arrested McIntosh for adult abuse and resisting arrest. Officers found McIntosh wearing fourteen .357 magnum shells and one .22 caliber long rifle shell while processing him at the jail.

On January 17, 1992, agents from the Bureau of Alcohol, Tobacco and Firearms issued a warrant to search McIntosh's apartment, where they seized a Titan .25 caliber semi-automatic pistol, marijuana, and various items of drug paraphernalia. During an interview with the officers, McIntosh admitted he sold marijuana from his residence, he carried a gun when selling the drugs, and he owned a .357 magnum which he used for target practice.

On April 22, 1992, New Madrid police again arrested McIntosh after he pointed a .22 caliber pistol at another man. Upon his arrest, he handed over to the officers a small bag of marijuana. The officers seized a .22 caliber gun, a Western style cap and ball pistol, a 12–gauge shotgun, a stun gun, a claw hammer, and a fireplace poker from McIntosh's car.

McIntosh was indicted a short time later for various drug-related charges, including possessing an "Arminius Western Star .357 magnum revolver" during a drug trafficking crime. The jury found McIntosh guilty on all counts. The district court sentenced him to 46 months in prison on the distribution and unlawful user counts. The court also sentenced him to a term of 60 months to run consecutively on the firearms counts. McIntosh appeals.

## I.

■ McIntosh first argues that the district court erred in allowing the government to mark as an exhibit and show to the jury a gun similar to the one McIntosh wore in a holster during the drug sales. This gun was not the firearm recovered from McIntosh and the court never received it into evidence.

At trial, Hodge and Townsend testified that McIntosh carried a firearm when he sold them marijuana. Officer Hodge testified that McIntosh carried what Hodge believed, based on his experience as a police officer, was a .357 magnum gun during the drug purchase. Townsend testified that McIntosh carried a .357 gun during three drug purchases and that McIntosh told Townsend the gun he carried was a .357 magnum. The government contends it presented a Smith & Wesson .357 revolver and shoulder holster to the jury as demonstrative evidence to assist the jury in assessing the credibility of Hodge and Townsend. The district court overruled McIntosh's objections at trial to these exhibits. The government argues the gun was not prejudicial because the government ensured, through its questions to Officer Hodge during his testimony, that the jury recognized the government offered the gun only for the purpose of showing a similar gun.

By observing the size and shape of a .357 revolver, the jury could better assess whether Hodge and Townsend actually could have seen the revolver under McIntosh's jacket as they testified. *See* Fed.R.Evid. 401, 402. Indeed, the government conceded to the jury that it presented the gun and holster merely for the "purposes of demonstrating items similar to what [Hodge] saw" and that the items did not come from McIntosh. In addition, at the close of the trial, the court instructed the jury that it was "not necessary that the government prove that the defendant carried the exact firearm alleged in the indictment. Rather, it is sufficient that the government prove that the defendant carried any firearm." Thus, we cannot say that the district court abused its broad discretion in

allowing the government to show the items to the jury.

## II.

■ McIntosh also argues the district court erred in refusing to grant his motion for acquittal because the indictment charged McIntosh with using a brand of gun that does not exist. Count II of the indictment specifically charged McIntosh with using an "Arminius Western Star .357 magnum revolver." Apparently, the indictment listed the model identification of "Western Star" because when ATF Agent Diveley interviewed McIntosh, Diveley understood McIntosh as saying he carried a "Western Star" during the drug sales. In Agent Diveley's second interview with McIntosh, which occurred after the indictment, he understood McIntosh to identify the firearm as an Arminius brand "western style" .357 magnum. McIntosh argues that since the specific brand listed in the indictment ("Western Star") does not exist, he cannot be found guilty because the government failed to prove an essential element of the offense. The government counters that it need only prove the essential elements of the offense, and that the brand of the gun was "mere surplusage."

■ A court may ignore independent and unnecessary allegations in an indictment. *United States v. Miller,* 471 U.S. 130, 144, 105 S.Ct. 1811, 1819, 85 L.Ed.2d 99 (1985). Allegations in the indictment that are not necessary to establish a violation of a statute are surplusage and may be disregarded if the remaining allegations are sufficient to charge a crime. *United States v. Washington,* 992 F.2d 785, 787 (8th Cir.) (citing *United States v. Mastrandrea,* 942 F.2d 1291, 1293 (8th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 973, 117 L.Ed.2d 138 (1992)), *cert. denied,* — U.S. —, 114 S.Ct. 356, 126 L.Ed.2d 320 (1993). Section 924(c) requires that the defendant commit a drug trafficking crime, and that during and in relation to the commission of that crime the defendant knowingly use or carry a firearm. *See* 18 U.S.C. § 924(c); *United States v. Matra,* 841 F.2d 837, 842 (8th Cir.1988). The references to the manufacturer "Arminius" and to the

model "Western Star" were surplusage to the offense of carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Because the specific type of firearm is not an element of the offense which the government must prove, the references to "Arminius" and the "Western Star" model do not invalidate the indictment. *See United States v. Robison,* 904 F.2d 365 (6th Cir.) (specific type of firearm is not an essential element of section 924(c) offense), *cert. denied,* 498 U.S. 946, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990). Therefore, the district court did not err in overruling McIntosh's motion for acquittal based on the type of firearm used.

## III.

■ McIntosh also argues the jury instructions impermissibly amended the indictment, which listed a specific brand of firearm. Specifically at issue is Jury Instruction 21 which charged: "[I]t is not necessary that the government prove that the defendant carried the exact firearm alleged in the indictment. Rather, it is sufficient that the government prove that the defendant carried any firearm." Because we conclude that the brand of the firearm is not an essential element of the offense, we reject McIntosh's argument.

McIntosh did not object to the instruction at trial and raises this issue for the first time in this appeal. Therefore, we will reverse the district court only for plain error. *United States v. Martin,* 933 F.2d 609, 611 (8th Cir.1991). McIntosh is entitled to relief only if the error "would result in a miscarriage of justice if left uncorrected." *Id.* (quoting *United States v. Schmidt,* 922 F.2d 1365, 1369 (8th Cir.1991)).

■ An indictment may not be amended after a grand jury has returned it. *United States v. Huntsman,* 959 F.2d 1429, 1435 (8th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 201, 121 L.Ed.2d 143 (1992). "An amendment occurs 'when the essential elements of the offense set forth in the indictment are altered, either actually or in effect, by the prosecutor or the court after the grand jury has passed upon them.'" *Id.* (quoting *Unit-*

ed States v. Begnaud, 783 F.2d 144, 147 & n. 4 (8th Cir.1986)). However, a variance in the indictment "occurs when the essential elements of the offense set forth in the indictment are left unaltered but the evidence offered at trial proves facts materially different from those alleged in the indictment." Id. If there is only a variance, we need not reverse if the indictment "fully and fairly apprised" McIntosh of the charges, that is, if the variance is harmless. Id.

McIntosh points us to United States v. Leichtnam, 948 F.2d 370 (7th Cir.1991), in support of his contention that the indictment was altered. There, the defendant was indicted and charged with using or carrying a Mossburg rifle in violation of 18 U.S.C. § 924(c). Id. at 374–75. The court instructed the jury to convict the defendant if it found he had used "a firearm." Id. at 379. The Seventh Circuit held the instructions constituted an amendment to the indictment, based on the premise that the brand of rifle was not mere surplusage but an essential element of the crime. Id. That court also considered the instruction an amendment because the prosecutor showed two handguns and a rifle to the jury when the defendant had been charged only with using or carrying a rifle. Id. The court found that in "the context of the entire jury charge and the entire trial," the introduction of three guns instead of the one specifically charged amounted to a violation of the defendant's right to be tried only on the crimes charged in the indictment. Id. Here, in contrast to Leichtnam, the government did not offer into evidence firearms with which McIntosh was not charged, but only showed a gun similar to the one charged in the indictment.

We concluded above that the specific type of firearm is not an element of the offense with which McIntosh was charged and was mere surplusage. It follows that the inclusion of the brand of firearm does not amount to a constructive amendment, but is only a variance. The indictment fully and fairly apprised McIntosh of the charges against him. We do not believe McIntosh's defense

was prejudicially affected by the type of firearm he was convicted of possessing. The fact that he possessed any type of gun is sufficient to justify the conviction.

## IV.

█ McIntosh next argues the district court erred in rejecting his motion for acquittal on the charge of being an "unlawful user of a controlled substance" in violation of 18 U.S.C. § 922(g)(3). Section 922(g)(3) prohibits any person who is either an unlawful user or addicted to a controlled substance from possessing any firearm. McIntosh argues we should interpret this statute to require the government to prove he was using the controlled substance at the same time he was in possession of the firearm.

McIntosh reads section 922(g)(3) too restrictively. Our interpretation of section 922(g)(3) comports with the Eleventh Circuit's reasoning in United States v. Corona, 849 F.2d 562 (11th Cir.1988), cert. denied, 489 U.S. 1084, 109 S.Ct. 1542, 103 L.Ed.2d 846 (1989). Corona held the government does not need to prove the defendant was actually using or addicted to drugs at the exact moment he purchased the firearms in question in order to be convicted as an "unlawful user." Id. at 567. The plain language requires that the government only prove McIntosh was an "unlawful user" or addicted to a controlled substance during the time he possessed firearms.[2]

The government presented ample evidence at trial from which the jury reasonably could have concluded McIntosh was an unlawful user or addicted to marijuana or other drugs during the time he possessed firearms. For example, during the search of McIntosh's apartment, the police found marijuana, syringes, scales, and other drug paraphernalia. Townsend testified he smoked marijuana with McIntosh on previous occasions. Hodge testified McIntosh told him he used "crank," which is a street-term for methamphetamine. Officer DeLisle, who spoke with McIntosh immediately after his arrest in April, testified that McIntosh said to him "I am addicted to

---

**2.** In Corona, the court found unlawful use is "arguably a subset of addiction." 849 F.2d at 563 n. 2.

 

drugs and alcohol." When the officers arrested McIntosh, he possessed a small package of marijuana. Finally, Agent Diveley testified that McIntosh told him that when he sold $1,000 worth of marijuana he would "treat" himself to a gram of cocaine. Viewing this evidence in the light most favorable to the government, as we must, we conclude the district court did not err in overruling McIntosh's motion for acquittal on charges of possession of firearms by an unlawful user or a person addicted to a controlled substance.

## V.

McIntosh's final contention is that the district court erred in enhancing his base offense level under United States Sentencing Commission, *Guidelines Manual*, § 3C1.1 (Nov.1993), for willfully obstructing or impeding judicial proceedings. We review a district court's findings in support of this enhancement under the clearly erroneous standard. *United States v. Grady*, 997 F.2d 421, 425 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 416, 126 L.Ed.2d 363 (1993). A district court's conclusions regarding the credibility of witnesses are "virtually unreviewable on appeal." *United States v. Adipietro*, 983 F.2d 1468, 1479 (8th Cir.1993).

The district court enhanced McIntosh's sentence by two levels based on the testimony of Agent Diveley that he overheard McIntosh tell his wife on the phone from jail to "take care of" two individuals McIntosh suspected told the police he sold drugs. Agent Diveley also testified that McIntosh appeared "very angry" and "very demanding" when he spoke to his wife on the phone. McIntosh argues that because his wife did not actually carry out the threat, the enhancement was unjustified. This argument is without merit. *See United States v. Larson*, 978 F.2d 1021, 1025 (8th Cir.1992) (obstruction of justice enhancement applies to direct and indirect attempts to threaten a witness). After reviewing the record, we conclude the court did not clearly err in imposing the two-level enhancement. *See Grady*, 997 F.2d at 425; *see also United States v. Wiley*, 997 F.2d 378, 386 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 600, 126 L.Ed.2d 565 (1993).

Accordingly, we affirm McIntosh's convictions.