**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ivan GARCIA–PAZ, Defendant–
Appellant.**

**No. 01–50078.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 9, 2001.

Filed March 13, 2002.

---

Gary P. Burcham, San Diego, CA, for the defendant-appellant.

Patrick K. O'Toole, United States Attorney, Brian M. Pearce, Assistant United States Attorney, U.S. Attorney's Office, San Diego, CA, for the plaintiff-appellee.

Before GOODWIN, WALLACE and THOMAS, Circuit Judges.

WALLACE, Circuit Judge.

Garcia–Paz appeals from his conviction, following a jury trial, of importation of merchandise in violation of 18 U.S.C. § 545 (2001). He argues that (1) for the purposes of section 545, marijuana does not constitute "merchandise"; (2) the district court improperly refused to instruct the jury that it must find that Garcia–Paz knowingly imported marijuana in order to sustain a conviction under section 545; and (3) there was insufficient evidence to support his conviction of importation of merchandise in violation of section 545 because he believed he was smuggling medicine, not marijuana. The district court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction over this timely filed appeal pursuant to 28 U.S.C. § 1291. We affirm.

## I.

On July 21, 2000, approximately 1:20 p.m., Garcia–Paz entered the United States from Mexico at the San Ysidro port of entry in an ambulance driven by Reynoso–Cordero, while Garcia–Paz, working as an emergency medical technician and translator, was in the back of the ambulance with a patient in critical condition. The patient was to be delivered to an air ambulance at nearby Brown Field in the United States. As the ambulance went through an emergency lane, a narcotics dog sniffed the ambulance and alerted. United States customs officials allowed the ambulance to proceed to Brown Field to deliver the patient to the air ambulance, but instructed Reynoso–Cordero to return immediately to the San Ysidro port of entry upon completion of the delivery for a more thorough inspection of the vehicle. A customs inspector followed the ambulance to the airport to ensure compliance with the instruction to return. Upon subsequent inspection at the port of entry, customs inspectors found a total of 239 packages throughout the ambulance, containing approximately 1,000 pounds of marijuana. Reynoso–Cordero waived his *Miranda* rights and gave a statement in which he admitted knowledge of the marijuana and stated that he had told Garcia–Paz that the smuggling venture involved "illegal drugs." Thereafter, Garcia–Paz was advised of his *Miranda* rights, waived them in writing, and agreed to an interview. Garcia–Paz denied knowledge of the marijuana, asserting that he knew only that he was being paid $400 to help bring "medicine" across the border. He stated that he had worked for Reynoso–Cordero several times as a translator when patients were transported to the United States, and that he was usually paid $50 per trip. Garcia–Paz further stated that Reynoso–Cordero had called him at about 11:00 a.m. that morning and offered him $400 to

transport some medicine to a pharmacy. Garcia–Paz said that he knew his conduct was illegal.

Garcia–Paz was originally indicted by the grand jury for violations of 21 U.S.C. §§ 952 and 960, importation of marijuana, and 21 U.S.C. § 841(a)(1), possession of marijuana with intent to distribute. A superseding indictment also charged him with importation of merchandise in violation of 18 U.S.C. § 545. Following the government's case, Garcia–Paz moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29; the district court took the motion under consideration. Over the objection of Garcia–Paz, the district court instructed the jury that marijuana constituted merchandise for purposes of 18 U.S.C. § 545, and that Garcia–Paz could be deemed culpable under count three (importation of merchandise in violation of section 545) if he believed he was smuggling any illegal merchandise across the border, regardless of what was actually found in the ambulance. The jury returned verdicts of not guilty on counts one and two (importation of marijuana and possession of marijuana with intent to distribute, respectively) and guilty as to count three. The district court thereafter denied Garcia–Paz's motion for judgment of acquittal as to count three.

## II.

■ Garcia–Paz argues that the district court improperly instructed the jury that marijuana constitutes "merchandise" for purposes of 18 U.S.C. § 545. We review de novo the district court's interpretation of a statute. *United States v. Doe,* 136 F.3d 631 (9th Cir.1998).

Garcia–Paz and the government agree that while "merchandise" is not defined in Title 18, it is defined in Title 19, which was part of the same act as Title 18, and that Title 19 should control the definition of merchandise for purposes of 18 U.S.C. § 545. Title 19 defines "merchandise" as "goods, wares, and chattels of every description, . . . includ[ing] merchandise the importation of which is prohibited." 19 U.S.C. § 1401(c) (2001). Garcia–Paz points out that Title 19 goes on to define "controlled substance" by saying "[f]or purposes of this chapter, a controlled substance shall be treated as merchandise the importation of which into the United States is prohibited, . . ." and that therefore by negative implication, controlled substances should not be treated as merchandise outside of that particular chapter. 19 U.S.C. § 1401(m). Garcia–Paz argues that since the offense with which he was charged, a violation of 18 U.S.C. § 545, is outside the chapter, the controlled substance marijuana is not merchandise.

The description in section 1401(m) of controlled substances as merchandise "[f]or purposes of this chapter" does not say that a controlled substance is merchandise "for purposes of this chapter *only.*" Considering the breadth of the definition of merchandise contained in section 1401(c) ("goods, wares, and chattels *of every description*" (emphasis added)), there is no reason to believe that Congress meant to restrict in any way the categories of things that could qualify as merchandise under that definition.

Further, the use of the limiting phrase "for purposes of this section" has been interpreted in other contexts not to limit the application of the relevant definition to that section *only, see Johnson v. United States,* 206 F.2d 806, 808 (9th Cir.1953), and there is no reason to believe a different conclusion should be reached when the word "chapter" is substituted for "section."

Finally, our precedent portends our holding today that "merchandise" under section 545 includes marijuana. *Steiner v. United States,* 229 F.2d 745, 747 & n. 5

(9th Cir.1956), opined in dicta that the definition of "merchandise" in 19 U.S.C. § 1401(c) probably applies to violations of 18 U.S.C. § 545, and *Olais–Castro v. United States,* 416 F.2d 1155, 1158 n. 7 (9th Cir.1969), assumed without deciding that *Steiner* was correct. *See also United States v. Jerome–Oboh,* 883 F.Supp. 917, 923 n. 4 (W.D.N.Y.1995) (holding that "[h]eroin should be considered 'merchandise,' for purposes of the smuggling statute"); *United States v. Meza–Arcadia,* 458 F.2d 31, 31–32 (9th Cir.1972) (affirming a conviction under 18 U.S.C. § 545 for smuggling marijuana); *Padron v. United States,* 254 F.2d 574 (5th Cir.1958) (same).

Applying the section 1401(m) definition to section 545 violations does not, as Garcia–Paz suggests, render the limiting language ("for purposes of this chapter") in section 1401(m) meaningless. A fair reading of section 1401(m) demonstrates that the limiting language is more appropriately read to qualify the entire phrase "merchandise the importation of which into the United States is prohibited," rather than simply "merchandise." 19 U.S.C. § 1401(m). Section 1401(m) does not define controlled substances or merchandise. It explicitly states that the term "controlled substance" has a meaning assigned elsewhere. Rather, section 1401(m) simply delineates *the class of merchandise* into which controlled substances fall and designates them for special treatment *under this chapter* because they are merchandise "the importation of which" is, with certain explicitly stated exceptions, prohibited. 19 U.S.C. §§ 1401(c) and 1401(m).

### III.

██ Garcia–Paz next argues that, in refusing his proposed jury instruction, which would have required the jury to find that Garcia–Paz knowingly imported marijuana to sustain a conviction under 18 U.S.C. § 545, the district court committed revers-ible error and violated his Fifth Amendment right to stand trial only on charges made by a grand jury in its indictment. Garcia–Paz bases this argument on the proposition that, by adding the appositive phrase "to wit, marijuana," the indictment charged that Garcia–Paz knowingly imported marijuana. Garcia–Paz then bases his Fifth Amendment argument on the rule that "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Stirone v. United States,* 361 U.S. 212, 215–16, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). Garcia–Paz contends that by not requiring the jury to find that he knowingly imported marijuana in the jury instruction under count three, the district court broadened the charges against him such that the government no longer had to prove that he knew he was smuggling marijuana. "Whether a jury instruction misstates elements of a statutory crime is question of law" we review de novo. *United States v. Romo–Romo,* 246 F.3d 1272, 1274 (9th Cir.2001) (citing *United States v. Johnson,* 956 F.2d 197, 199 (9th Cir.1992)).

A plain reading of the indictment does not support the construction Garcia–Paz advances. The relevant portion of the third count of the indictment reads: "defendant IVAN Garcia–Paz, did knowingly import and bring into the United States certain merchandise, to wit, marijuana, contrary to law." The government explains that the phrase "to wit" did not speak to Garcia–Paz's knowledge, but rather was there to inform the jury what "merchandise" the government would prove was smuggled. Webster's New World Dictionary supports this argument by defining "to wit" as "that is to say; namely." *Webster's New World Dictionary* 1534 (Third College ed. 1988). Hence, from a purely textual and definitional analysis, Garcia–Paz's argument fails. The inclu-

sion of the "to wit" phrase in the indictment was mere surplusage and did not cause the indictment to allege that Garcia–Paz had knowledge of the marijuana. Consequently, the removal of the reference to marijuana from the jury instruction did not alter the charge against Garcia–Paz.

Further, in all of the cases Garcia–Paz cites to support his position, the difference between the indictment and the jury instructions allowed the defendant to be convicted on the basis of *different behavior* than that alleged in the original indictment. In *Howard v. Dagget,* 526 F.2d 1388 (9th Cir.1975), the indictment charged knowing and willful travel in interstate commerce for the purpose of promoting prostitution by inducing two named women to engage in prostitution. *Id.* at 1389. Evidence was introduced at trial regarding women other than those named in the indictment. *Id.* at 1390. The jury specifically inquired whether it was to decide on the basis of the indictment or the jury instructions. *Id.* at 1389–90. The court instructed the jury that it was to decide on the basis of the jury instructions, and that additional language contained in the indictment was surplusage. *Id.* at 1390. In that case, we found that "allow[ing] the jury to consider the evidence respecting the other alleged prostitutes was to allow the jury to convict of a charge not brought by the grand jury. The supplemental instruction constituted an impermissible amendment of the indictment...." *Id.*

Similarly, in *United States v. Leichtnam,* 948 F.2d 370 (7th Cir.1991), the indictment charged Leichtnam with knowingly using and carrying a specifically named rifle. *Id.* at 379. The jury was presented with evidence of three different guns (two handguns and a rifle) and then was instructed that "it could convict ... if convinced that [the defendant] had used 'a firearm'—in effect, any one of the three." *Id.* Under that instruction, Leichtnam

could be convicted of having carried any one of three firearms, rather than only the rifle alleged in the indictment. Consequently, the Court held that "the introduction of three guns, where only one had been charged, together with the faulty instruction on count two, destroyed Leichtnam's fifth amendment [sic] right to be tried only on the charges contained in the indictment." *Id.*

The present case, however, more closely resembles another line of cases which permits conviction despite variance between the jury instructions and the indictment, so long as the variation in jury instructions does not alter the behavior for which the defendant can be convicted. In *Raymond v. United States,* 376 F.2d 581 (9th Cir. 1967), the indictment charged the defendant with using an interstate telephone line "for the promotion and carrying on 'of prostitution, an unlawful activity, and thereafter attempt[ing] to perform the promotion and carrying on of prostitution, in violation of the laws of Nevada.'" *Id.* at 582. Because the district court read Nevada law to say that the particular way of facilitating prostitution, and not prostitution itself, was unlawful in Nevada, the court instructed the jury to disregard as surplusage the words "of prostitution" as they were found at the beginning of the indictment. *Id.* We held that the court's instruction was simply a clarification of the charge and that "[a]t most, [t]he action here complained of is merely a judicial holding that a useless averment is innocuous and may be ignored." *Id.* at 583 (internal quotation marks and citations omitted). The behavior for which Raymond was ultimately convicted was the same as that alleged in the indictment.

Similarly, in *United States v. McIntosh,* 23 F.3d 1454 (8th Cir.1994), due to an agent's misunderstanding of McIntosh's speech, "the indictment charged McIntosh

with using a brand of gun that does not exist." *Id.* at 1457. The Eighth Circuit held that the erroneous description of the gun was surplusage. *Id.* It stated that "[a] court may ignore independent and unnecessary allegations in an indictment. Allegations in the indictment that are not necessary to establish a violation of a statute are surplusage and may be disregarded if the remaining allegations are sufficient to charge a crime." *Id.* (internal citations omitted). *See also United States v. Knuckles,* 581 F.2d 305, 308–12 (2d Cir. 1978); (stating that "[t]he operative facts were the same whether the controlled substance was heroin or cocaine" and concluding that "the variance was not substantial"); *Bridges v. United States,* 346 U.S. 209, 223, 73 S.Ct. 1055, 97 L.Ed. 1557 (1953) (holding that "[t]he insertion of surplus words in the indictment does not change the nature of the offense charged").

Similarly, in the present case, section 545 prohibits smuggling of "merchandise." 18 U.S.C. § 545. Whether that merchandise is illegal medicine or marijuana does not matter under the statute. Thus, the phrase "to wit, marijuana" is surplusage, and does not render the jury's conviction of Garcia–Paz on that charge a violation of Garcia–Paz's Fifth Amendment rights.

## IV.

■ Finally, Garcia–Paz argues that there is insufficient evidence to support his conviction because there was no evidence introduced at trial that he knew he was importing marijuana. We review claims of insufficient evidence de novo. *United States v. Antonakeas,* 255 F.3d 714, 723 (9th Cir.2001) (citing *United States v. Duran,* 189 F.3d 1071, 1078 (9th Cir.1999)). There is sufficient evidence to support a conviction if, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ Evidence that Garcia–Paz knew he was importing marijuana is not required to support a conviction under 18 U.S.C. § 545. The statute states in part "[w]hoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law ... [s]hall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 545. The word "knowingly" in this construction modifies "imports or brings into the United States, any merchandise contrary to law." It is not a requirement of the offense that the defendant know the type of merchandise he is importing. He need only know that he is importing or bringing in "merchandise contrary to law."

Garcia–Paz knew he was bringing in merchandise contrary to law. He simply may have been mistaken as to the type of merchandise, thinking it medicine rather than marijuana. This mistake does not negate an element of the offense described in the statute. 1 Charles E. Torcia, *Wharton's Criminal Law,* § 78 (15th ed. 1993) (explaining that a mistake of fact does not negate the mens rea element of a crime "if the defendant would be guilty of another offense had the facts been as he believed them to be."). Hence, there was sufficient evidence to support his conviction under section 545.

AFFIRMED.