*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0358p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

                  *Plaintiff-Appellee,*

    *v.*

LEADRICK BEASLEY,

                  *Defendant-Appellant.*

No. 08-5164

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 07-20129-001—Bernice B. Donald, District Judge.

Argued: August 5, 2009

Decided and Filed: October 8, 2009

Before: SILER, MOORE, and GRIFFIN, Circuit Judges.

_____

**COUNSEL**

_____

**ARGUED:** Needum L. Germany III, OFFICE OF THE FEDERAL PUBLIC DEFENDER,
Memphis, Tennessee, for Appellant. E. Greg Gilluly, Jr., ASSISTANT UNITED STATES
ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Needum L. Germany III,
OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.
E. Greg Gilluly, Jr., ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee,
for Appellee.

_____

**OPINION**

_____

     GRIFFIN, Circuit Judge. Leadrick Beasley appeals his conviction of one count of
felon in possession of ammunition in violation of 18 U.S.C. § 922(g). He argues that his
conviction should be vacated on the ground that the district court constructively amended
his indictment by instructing the jury that it could convict him if it found that he possessed
any caliber of ammunition when the indictment charged him with possessing .25 caliber

1

ammunition but the evidence at trial showed that he actually possessed .22 caliber ammunition. Beasley also contends that the district court abused its discretion by denying his request for a mistrial after the prosecutor asked Beasley on cross-examination whether he told Wilma Mack (Beasley's girlfriend) to "go see my lawyer he'll tell you what to say." We disagree and affirm.

I.

On April 24, 2007, a grand jury returned a one-count indictment charging Beasley, a convicted felon, with possessing ammunition, specifically, "three (3) spent .25 caliber shell casings with the head-stamp marking of 'C,' in violation of Title 18, United States Code, Section 922(g)." During jury selection, the government filed a motion to strike the caliber of ammunition alleged in the indictment as "surplusage." Beasley objected to the motion, and the court denied it.

At trial, Major Currie, Beasley's landlord, testified that on the morning of January 19, 2007, he and Beasley were involved in an argument outside the boarding house where Beasley lived. Although the confrontation ended, Beasley returned later that evening to the boarding house with his live-in girlfriend, Wilma Mack. Both men allegedly exchanged "words." According to Currie, Beasley then aimed a pistol at him and fired approximately three shots before driving off. Currie, who was not harmed, called 911. Thereafter, officers arrived at the scene and collected three shell casings close to where Beasley allegedly fired the shots.

Officer Daniel Washington of the Memphis Police Department responded to Currie's 911 call. When Washington arrived, Currie appeared to be "rattled," "very, very unorganized," and was "pacing." Mack, who was also upset, told Washington that Beasley fired three shots, apprised him of the location of the spent shell casings, and gave him a shell casing that she found between the sidewalk and the front yard. Washington and his partner recovered the other two shell casings from the scene.

Memphis Police Officer Michael Warren also responded to Currie's 911 call. Mack told Warren that Beasley had driven to the Bristol Apartments. Warren and his partner, Detective Rodney Alexander, intercepted Beasley in the parking lot of the apartments.

When they identified themselves as police officers, Beasley attempted to escape. A foot chase ensued, and the officers caught and arrested Beasley. After they informed him of his Miranda rights, Beasley allegedly confessed in a sworn statement that he had been armed with a firearm he purchased three weeks ago, and he conceded that no one else had been armed. Although he denied aiming the gun at Currie, Beasley admitted that he "shot it in the air" and then "tossed" the gun. He explained that he fired the gun because Currie was making "disrespectful" remarks about him to his girlfriend.

Special Agent Joseph Bradley of the Bureau of Alcohol, Tobacco, and Firearms testified as an expert in firearms and ammunition identification and origin of manufacturer. He stated that the three shell casings recovered were .22 caliber and were manufactured outside the state of Tennessee and therefore had the means to travel in interstate commerce.[1]

Beasley called EJ Simmons, a resident of the boarding house, as a defense witness. Simmons testified that he was at home when the alleged crime occurred and that he did not hear any gunshots. He also stated that on New Year's Eve and the Fourth of July, "[e]verybody in the neighborhood" fires weapons into the air.

Beasley also testified in his own defense. On the day of the alleged crime, Beasley maintained that he performed landscape work for a friend and then attended a "get-together" at the Bristol Apartments. Thereafter, he took Mack to the store. When Beasley and Mack returned to the boarding house, Currie arrived at the same time, exited his vehicle screaming and yelling, and Currie and Beasley began arguing. According to Beasley, he neither possessed a gun nor fired one. Instead, he returned to his friend's apartment. When Detective Warren telephoned Beasley and told him to return to the boarding house to explain what had happened, Beasley insisted that Warren interview him at his friend's apartment. Beasley asserted that when Warren did not arrive, he attempted voluntarily to return home, but "a big SUV with tinted windows pulled up and two guys jumped out with guns" and apprehended him. After police allegedly handcuffed him to a chair for hours and warned him that they would charge him with

---

[1]Bradley explained that when he prepared his expert report identifying the ammunition as .25 caliber, he relied upon misinformation contained in a police document. On cross-examination, he conceded that he "should have caught the error."

murder, Beasley confessed to the crime because he was "scared," "hungover," and "tired."

On cross-examination, Beasley admitted that he discussed his case with Mack while he was incarcerated. He agreed that he told Mack "I've got a lot to tell you but I can't do it over the phone because it's recorded" and that "I got to get with you. I got to get with you. You're my way. I can beat this case."

The prosecutor then asked Beasley whether he told Mack to "go see my lawyer he'll tell you what to say[.]" Beasley denied making the statement and demanded proof. Thereafter, defense counsel moved for a mistrial, arguing that the question was improper because it implicated Beasley and himself in a conspiracy to incite Mack to commit perjury. The tape recorded jailhouse conversation confirmed that Beasley actually told Mack: "You can see my lawyer, he'll tell you what you need to do." The district court denied the motion for a mistrial.

The jury found Beasley guilty. He was sentenced to seventy-seven months of imprisonment.

Beasley timely appeals.

II.

Beasley requests that we vacate his conviction on the ground that the district court constructively amended his indictment by instructing the jury that it could convict him if it found that he possessed any caliber of ammunition, even though the indictment charged him with possessing .25 caliber ammunition and the evidence at trial showed that he actually possessed .22 caliber ammunition.

Whether there has been an amendment or variance to an indictment is a legal question that we typically review de novo. *United States v. Nance*, 481 F.3d 882, 886 (6th Cir. 2007). However, a thorough review of the record and the parties' appellate briefs reveals that Beasley failed to raise the issue before the district court. Accordingly, we review the issue for plain error. *See* FED. R. CIV. P. 52(b); *United States v. Cotton*,

535 U.S. 625, 631 (2002) (reviewing a constructive amendment to an indictment which increased the maximum statutory sentence for plain error because defendant made no objection); *United States v. Hunter*, 558 F.3d 495, 501 (6th Cir. 2009); *United States v. Kuehne*, 547 F.3d 667, 682 (6th Cir. 2008).

We have recognized two categories of indictment modification:

An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A variance occurs when the charging terms of an indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment.

*Nance*, 481 F.3d at 886 (citations and internal quotation marks omitted). While an amendment violates the Fifth Amendment's grand jury guarantee, a variance infringes upon the Sixth Amendment's "apprisal function." *United States v. Ford*, 872 F.2d 1231, 1235 (6th Cir. 1989) (citing 1 C. Wright, FEDERAL PRACTICE AND PROCEDURE § 127 (1982)).

Because they implicate different constitutional concerns, we scrutinize amendments and variances differently. "An amendment is per se prejudicial, as it directly infringes the defendant's right to know of the charges against him by effectively allowing the jury to convict the defendant of a different crime than that for which he was charged." *Martin v. Kassulke*, 970 F.2d 1539, 1542 (6th Cir. 1992). "A variance is not reversible error unless the defendant demonstrates prejudice." *Nance*, 481 F.3d at 886. However, the line separating an amendment from a variance is blurry: "If a variance infringes too greatly upon the defendant's Sixth Amendment right to be informed of the nature and cause of the accusation against him, then it is considered a constructive amendment and is accorded the per se prejudicial treatment of an amendment." *Id.* (citation and internal quotation marks omitted). A variance becomes a constructive amendment "only when the variance creates a substantial likelihood that a defendant may have been convicted of an offense other than that charged by the grand jury." *Id.* (citations and internal quotation marks omitted). This may occur when "the presentation of evidence and jury instructions . . . modify essential elements of the offense

charged[,]" *United States v. Robison*, 904 F.2d 365, 369 (6th Cir. 1990) (citations and internal quotation marks omitted), or when "the difference between the indictment and the jury instructions allowed the defendant to be convicted on the basis of *different behavior* than that alleged in the original indictment." *United States v. Garcia-Paz*, 282 F.3d 1212, 1216 (9th Cir. 2002).

Beasley does not claim that his indictment was "literally" amended, and indeed it was not because the district court denied the government's motion to remove the caliber of ammunition charged in the indictment and read the unaltered indictment to the jury. He also acknowledges our ruling in *Robison* that a discrepancy between the type of firearm charged in the indictment and the firearm actually used to commit the crime of carrying a firearm during a drug trafficking crime under 18 U.S.C. § 924 is a variance, not a constructive amendment, "because the specific type of firearm used or possessed by [a] conspirator is not an essential element of the crime." *Robison*, 904 F.2d at 369 (acknowledging that "[t]he evidence at trial suggested that the gun carried was a shotgun, not a .357 Magnum" charged in the indictment but holding that the alteration was a variance that did not constitute reversible error because it did not affect defendant's substantial rights). However, he resists classifying the modification as a "variance," arguing that it crossed the threshold into a "constructive amendment" because "the specific caliber of [] ammunition charged in the indictment, combined with the jury instruction that allowed for a conviction upon the finding of any caliber of cartridge casing[,] . . . broadened the possible basis for conviction[.]"

The discrepancy between the caliber of ammunition charged in the indictment and the caliber of ammunition offered into evidence at trial was a variance, not a constructive amendment, because the indictment was unaltered, and although the evidence at trial relating to the caliber of ammunition differed from the caliber charged, it neither infringed upon Beasley's right to be informed of the nature and cause of the accusation against him nor created a substantial likelihood that the jury convicted him of an offense other than that charged by the grand jury. Moreover, the variance is not reversible error because it did not prejudice Beasley.

Beasley makes no contention that the district court erroneously instructed the jury on the elements of the charged crime. In fact, Beasley proposed the following instruction, which the court adopted and read to the jury:

> THE COURT: So on the proposed instruction read it the way you want it to read.
>
> [DEFENSE COUNSEL]: [I]t is not necessary that the Government prove that the Defendant possessed the exact caliber ammunition charged in the indictment; rather, it is sufficient that the Government prove the Defendant possessed ammunition.

Later, during his closing argument to the jury, Beasley's counsel stated: "The Government has said that they don't have to prove which caliber *and that's true*[.]" (Emphasis added.) Defense counsel's understanding comports with our holding, in the similar context of felon in possession of a firearm under 18 U.S.C. § 922(g), "that the particular firearm possessed is not an element of the crime under § 922(g), but instead the means used to satisfy the element of 'any firearm.'" *United States v. DeJohn*, 368 F.3d 533, 542 (6th Cir. 2004); *cf. Robison*, 904 F.2d at 369 (same under 18 U.S.C. § 924 prohibiting the carrying of a firearm during a drug trafficking crime).

In addition, there was no substantial likelihood that the jury convicted Beasley of an offense other than that charged by the grand jury. The only evidence offered by the government in attempting to prove the element of "any ammunition" under § 922(g) was a group of same-caliber shell casings that were found on the ground at the scene of the alleged shooting. Beasley relies upon *United States v. Leichtnam*, 948 F.2d 370 (7th Cir. 1991), in which the Seventh Circuit vacated the defendant's conviction under § 924 because it held that the indictment was impermissibly amended when it charged the defendant with carrying a rifle but the jury was shown two handguns, as well as the rifle. *Id*. at 379-80. The *Leichtnam* court reasoned that the charge in the indictment "may not be what [defendant] was convicted of" because "there is no way of knowing if the jury convicted [defendant] of using or carrying the [rifle] or the handguns or all of them." *Id*. The Seventh Circuit was also troubled by the prosecutor's admission that he "purposefully did not charge [in the indictment] the two handguns he introduced at trial" because "he 'felt that they were sufficiently attenuated from the drug evidence that it

would be inappropriate to charge [defendant] with those two guns.'" *Id*. at 380. "[I]f the [prosecutor] felt that he didn't have evidence to connect the handguns to a drug transaction," the court explained, "then he should not have introduced them and tendered a jury instruction which allowed the jury to make that connection." *Id*. At oral argument, however, Beasley's counsel correctly conceded that *Leichtnam* is distinguishable.

Unlike *Leichtnam*, there was no risk that some or all jurors convicted Beasley of possessing different ammunition than the ammunition offered into evidence – there simply was no other ammunition. Significantly, Beasley's sole defense was that he did not possess ammunition; he did not suggest or argue to the jury that the caliber of ammunition was relevant to establishing his innocence. In his two motions for judgment of acquittal based upon insufficient evidence, Beasley revealingly made no mention of the variance as justifying his acquittal. In essence, the caliber of ammunition was an irrelevant component of establishing Beasley's guilt on the charged crime. *See United States v. Redd*, 161 F.3d 793, 796 (4th Cir. 1998) (characterizing as "irrelevant" to the crime of bank robbery whether the defendant used a black revolver as charged in the indictment or a silver handgun as shown at trial because the type of firearm was not an essential element of the crime charged). Courts have declined to elevate such insignificant discrepancies to "constructive amendment" status. *See United States v. Munoz*, 150 F.3d 401, 417 (5th Cir. 1998) (holding no constructive amendment of § 922(g) felon in possession of a firearm count where indictment identified a 12-gauge weapon but the evidence showed a 20-gauge weapon); *United States v. McIntosh*, 23 F.3d 1454, 1457 (8th Cir. 1994) (holding no constructive amendment of § 924(c) count where the brand of firearm alleged in the indictment differed from the brand of firearm offered as evidence at trial); *United States v. Morrow*, 925 F.2d 779, 781 (4th Cir. 1991) ("The omission of the first digit in a seven digit serial number of a firearm set forth in an indictment does not result in a substantial amendment to the indictment or a prejudicial variance in proof when corrected at trial.").

Because we have determined that there was a variance in the indictment and not a constructive amendment, "[i]n order to obtain reversal of [his] conviction[,]" Beasley must demonstrate that the variance affected "some substantial right." *United States v. Manning*, 142 F.3d 336, 339 (6th Cir. 1998). We have stated that "substantial rights of the defendant 'are affected only when the defendant shows prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions.'" *Kuehne*, 547 F.3d at 683 (quoting *United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006)). Beasley is unable to make this showing. Here, the indictment provided Beasley with fair notice of the charge of felon in possession of ammunition. Although the indictment identified a specific caliber of ammunition, Beasley knew, based upon the elements of the crime, that he had to defend himself against the government's efforts to prove that he possessed *any* ammunition, regardless of the caliber. He does not assert that he was unable to adequately prepare his defense, and the ammunition was available for his inspection well before trial. When the government discovered the discrepancy prior to the jury being sworn, it notified him immediately. Revealingly, Beasley did not move for a continuance of the trial. He makes no contention that the variance exposed him to future prosecutions based upon the same conduct. We also note that at trial, Beasley's counsel exploited the variance to his client's full advantage by accusing the government of being "sloppy" and by leading the government's expert firearms witness to admit repeatedly that he made a "mistake" in assessing the caliber.

For these reasons, and particularly under the applicable plain error standard of review, we hold that the variance does not justify reversing Beasley's conviction.

III.

Beasley contends that the district court abused its discretion by denying his request for a mistrial after the prosecutor asked Beasley on cross-examination whether he told Wilma Mack (Beasley's girlfriend) to "go see my lawyer he'll tell you what to say." The tape recorded jailhouse conversation confirmed that Beasley actually told Mack "go see my lawyer he'll tell you what to do." Beasley complains that the

erroneous question improperly suggested to the jury that he and his attorney conspired to incite Mack to commit perjury.

We review a preserved claim of prosecutorial misconduct for abuse of discretion. *United States v. White*, 563 F.3d 184, 193 (6th Cir. 2009). Our two-part test for determining whether prosecutorial misconduct warrants a mistrial requires us to examine (1) whether the prosecutor's remarks were improper and, if so, (2) whether they were flagrant. *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002). "[I]mproper remarks that are flagrant amount to *per se* reversible error; improper remarks that are not flagrant may amount to reversible error in certain circumstances." *United States v. Hargrove*, 416 F.3d 486, 493 (6th Cir. 2005). "To determine the flagrancy of the prosecutor's remarks, we look at (1) whether the statements tended to mislead the jury and prejudice the defendant; (2) whether the statements were isolated or pervasive; (3) whether the statements were deliberately placed before the jury; and (4) whether the evidence against the accused is otherwise strong." *White*, 563 F.3d at 193 (citations omitted). A remark held not to be flagrant may only be reversed when "(1) the proof against the defendant was not overwhelming, (2) opposing counsel objected to the conduct, and (3) the district court failed to give a curative instruction." *United States v. Brown*, 66 F.3d 124, 127 (6th Cir. 1995). "[W]e are mindful of a trial court's superior ability to assess aspects of an argument such as delivery and context." *United States v. Jackson*, 473 F.3d 660, 672 (6th Cir. 2007).

Although the government argues that the prosecutor's question could not have been improper because it was not a "statement" or "assertion," it ignores decisions from this court which have held or suggested that an attorney's conduct or questioning during cross-examination may be improper. *See, e.g., Smith v. Mitchell*, 567 F.3d 246, 256 (6th Cir. 2009); *White*, 563 F.3d at 193.

The prosecutor's conduct in the present case was improper, but not flagrant, for several reasons. First, the question did not mislead or prejudice defendant. The prosecutor later acknowledged his own mistake, informing the jury: "I think I misstated. I said 'say' before." He then corrected his error by asking Beasley whether he had "a

conversation where you said go see my lawyer he'll tell you what to do[.]" Beasley responded that he did have such a conversation with Mack. Thereafter, the tape recorded statement was played for the jury, allowing it to hear exactly what Beasley said. The physical evidence itself thus corrected any false impressions that the jury may have had. On redirect, defense counsel performed damage control skillfully, eliciting testimony from his client that he never told Beasley to send him a witness so that he could tell the witness what to say and did not tell Beasley what to say. Notably, the district court sanctioned the government for its error by excluding recordings of the remaining jailhouse conversations, explaining: "And that's the sanction for that slip of the tongue. Okay?"

The prejudicial effect of the complained-of question was de minimis, if at all. In fact, when considering the misstatement, along with the government's misidentification of the caliber of ammunition involved in the crime, the jury may well have wondered what other blunders the government may have made.

Second, the alleged misconduct was isolated. Beasley's misconduct claim is based upon a single objectionable question asked during an extensive (and intensive) cross-examination.

Third, the district court found that the question was a mistake and not a deliberate act. After noting that the recording was unclear, the court characterized the prosecutor's error as an "inadvertent . . . slip of the tongue" and acknowledged that counsel for both sides were "consummate professionals."

Fourth, the evidence against Beasley was strong. To prove a violation of 18 U.S.C. § 922(g), the government had to establish that (1) he was a convicted felon; (2) he possessed ammunition; and (3) the ammunition had traveled in or affected interstate commerce. *United States v. Sanders*, 404 F.3d 980, 987 (6th Cir. 2005). Beasley's stipulation that he was a convicted felon and Special Agent Bradley's testimony that the shell casings were all manufactured outside the state of Tennessee and traveled in interstate commerce satisfied two of the three elements.

Overwhelming evidence supports the third element. Beasley's sworn confession that he possessed a firearm and fired it (albeit, toward the sky) and his admitted attempt to flee from the police strongly suggest his guilt. Currie's testimony, his 911 call, and officers' descriptions of Currie's and Mack's distraught demeanors after the alleged incident provide further evidence of Beasley's guilt. Mack, Beasley's girlfriend at the time, implicated him in the crime and led law enforcement to the shell casings.

Finally, we note that the district court gave a proper curative instruction advising the jury that the objectionable question was improper, withdrawn, corrected by the prosecutor, should be disregarded, and that statements, arguments, and questions by counsel were not evidence. We presume that the jury followed the court's instructions on the law. *Washington v. Hofbauer*, 228 F.3d 689, 706 (6th Cir. 2000).

For these reasons, we hold that the district court did not abuse its discretion in denying Beasley's request for a mistrial.

IV.

We affirm Beasley's conviction.