**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0786n.06

No. 10-3231

**FILED**

*Nov 22, 2011*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

JONATHAN L. BOYD,

     Defendant-Appellant.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

_____

**Before:  MARTIN and GRIFFIN, Circuit Judges; and ANDERSON, District Judge.**[*]

     **S. THOMAS ANDERSON, District Judge.**  Jonathan Boyd was convicted of one count of conspiracy to defraud financial institutions and commit wire fraud, two counts of income tax evasion, and two counts of wire fraud.  The trial court denied Boyd's motion for judgment of acquittal and granted in part, denied in part Boyd's motion for a new trial.  Boyd was sentenced to concurrent terms of incarceration of sixty months on the conspiracy and income tax evasions counts and seventy-two months on the wire fraud counts.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

_____

[*] The Honorable S. Thomas Anderson, United States District Judge for the Western District of Tennessee, sitting by designation.

# I. BACKGROUND

## A. Factual background

According to the pre-sentence report, Boyd was employed by Summertyme Mortgage as a loan officer and processor. (PSR ¶ 29.) Boyd entered into a conspiracy with an individual named Donald Green, the owner of a large number of residential rental properties in Franklin County, Ohio. (*Id.*) The object of the conspiracy was to sell Green's properties to novice investors at fraudulently inflated prices. (*Id.*) For his role in the conspiracy, Boyd worked with an appraiser to create inflated appraisal values for Green's properties and then assisted the would-be investors in obtaining financing to purchase the properties. (*Id.* ¶ 30.) Boyd assisted one such buyer Regina Dravis in the preparation of her loan applications for the purchase of some of Green's properties. (*Id.*) Boyd included false representations on the applications which indicated that Dravis realized rental income on properties she owned, when the properties were actually vacant and in poor condition. (*Id.*) In fact, investors like Dravis were straw buyers who did not have money for the down-payments and were otherwise not creditworthy. (*Id.*) In Dravis's case, Green himself actually provided the down payment on the property Dravis purchased and then recovered the money at closing along with "consulting fees." (*Id.*) Green also paid Boyd a fee from these funds. (*Id.*) As a result of this scheme, Green was able to sell his own properties, which were vacant and in need of repairs, at a inflated price. (*Id.*) Between April 2, 2003, and March 17, 2004, the scheme resulted in the sale of

seventeen properties and the disbursement of $2,078,700 by twelve different financial institutions. (*Id.* ¶ 31.)

For three months following the closing on the properties, Boyd provided Dravis with the money to make the payments. (*Id.* ¶ 32.) However, at some point after the third month, Boyd and Dravis "had a falling out" after which time Boyd no longer provided Dravis with the money, and Dravis was no longer able to make the payments. (*Id.*) After crediting the value of the properties to the amount of the loans, the outstanding balance owed the financial institutions was $468,855.59. (*Id.*)

Furthermore, Boyd informed Summertyme Mortgage not to withhold any federal income taxes from his earnings during 2003 and 2004. (*Id.* ¶ 34.) Although he earned $155,502.39 in 2003 and $37,757.97 in 2004, Boyd failed to report any income to the IRS for those years. (*Id.*) Boyd also failed to report his capital gains realized from his scheme to defraud the financial institutions. (*Id.*)

B.      **Procedural history**

A sixty-eight count indictment charged Boyd and eight other individuals with offenses related to the fraudulent financing of residential rental properties. (*Id.* ¶ 1.) Specifically, count 3 of the indictment charged Boyd with conspiring with two other co-defendants in violation of 18 U.S.C. § 371 for the purpose of executing a scheme to defraud financial institutions in violation of 18 U.S.C. § 1344 and committing wire fraud in violation of 18 U.S.C. § 1343. (*Id.* ¶ 4.) Counts 6 and 7 charged Boyd with income tax invasion by filing false returns for the years 2003 and 2004 in violation of 26 U.S.C. § 7201. (*Id.* ¶ 6.) Counts 29 through 32 charged Boyd and two co-defendants with committing wire fraud in furtherance of a scheme to defraud financial institutions and

individuals in violation of 18 U.S.C. § 1343. (*Id.* ¶ 9.) Similarly, counts 38 through 41 charged Boyd and two co-defendants with conspiring to defraud financial institutions and others in violation of 18 U.S.C. § 1344. (*Id.* ¶ 11.) Seven of Boyd's co-defendants entered guilty pleas; Boyd and the remaining co-defendant proceeded to trial. Prior to trial, the district court granted the United States's motion to dismiss counts 38 through 41, the counts charging Boyd with a scheme to defraud financial institutions.

Following a jury trial in November 2008, Boyd was convicted on the conspiracy charge in count 3, the income tax evasion charges in counts 6 and 7, and the wire fraud charged in counts 29 through 32. The trial court granted in part and denied in part Boyd's motion for a new trial with respect to his convictions on counts 29 through 32. The trial court concluded that the convictions on counts 30 and 31 were against the manifest weight of the evidence because the government had not proven that the wire transfers at issue in those counts met the interstate element of the offense. Boyd's motion was denied in all other respects. The trial court sentenced Boyd to seventy-two months incarceration on the wire fraud counts to run concurrently with sentences of sixty months each on the conspiracy and tax evasion counts. (A.R. 272.) This timely appeal followed.

## II.  ANALYSIS

### A.  Constructive Amendment

Boyd's first claim on appeal is that the district court constructively amended the indictment, specifically the wire fraud charges in counts 29 and 32. These counts alleged that Boyd committed wire fraud in violation of 18 U.S.C. § 1343 by causing funds to be directed by wire transfer from the state of Michigan to the state of Ohio. Although the government introduced evidence at trial that

the wire transfers at issue traveled interstate and were received in Ohio, there was no evidence that the wire transfers originated in Michigan as alleged. Boyd argues on appeal that the district court constructively amended these counts through the introduction of this evidence and by the court's instructions to the jury. Boyd raised this issue before the district court in his motion for new trial.

This court reviews a district court's decision to grant or deny a motion for new trial pursuant to Federal Rule of Criminal Procedure 33 for an abuse of discretion. *United States v. Wettstain*, 618 F.3d 577, 590 (6th Cir. 2010). However, because Boyd preserved the issue in his motion for new trial, we review the legal question of whether there has been a constructive amendment to the indictment de novo. *United States v. Beasley*, 583 F.3d 384, 389 (6th Cir. 2009).

A modification to an indictment may take one of two forms: an amendment or a variance. *Id.* An amendment of the indictment means that "the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them." *Id.* (citation omitted). This court has held that "[a]n amendment is per se prejudicial, as it directly infringes the defendant's right to know of the charges against him by effectively allowing the jury to convict the defendant of a different crime than that for which he was charged." *Id.* (citation omitted). In contrast, a variance simply means that "the charging terms of an indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *United States v. Warshak*, 631 F.3d 266, 314 (6th Cir. 2010) (quotation omitted). A variance is not reversible error unless a defendant shows prejudice flowing from the variance. *Id.*

In this appeal, Boyd argues that there was a constructive amendment to counts 29 and 32 of the indictment against him. We have explained that "[a] variance becomes a constructive

amendment only when the variance creates a substantial likelihood that a defendant may have been convicted of an offense other than that charged by the grand jury." *Beasley*, 583 F.3d at 390 (citations and internal quotation marks omitted). A variance may cross the "blurry" line into constructive amendment when "the presentation of evidence and jury instructions modify essential elements of the offense charged." *Id.* 389-90 (quoting *United States v. Robison,* 904 F.2d 365, 369 (6th Cir. 1990) (internal quotation marks and ellipsis omitted)). A constructive amendment may also occur when "the difference between the indictment and the jury instructions allowed the defendant to be convicted on the basis of *different behavior* than that alleged in the original indictment." *Id.* at 390 (quoting *United States v. Garcia-Paz,* 282 F.3d 1212, 1216 (9th Cir. 2002) (italics in original)).

Boyd has not argued that there was an actual amendment of his indictment in this case, and this is not a case where the government asked the district court to alter the indictment as it did in *Beasley*. *Id.* However, it is undisputed that a variance occurred in so far as "the evidence offered at trial prove[d] facts materially different from those alleged in the indictment." *Id.* at 389. The government conceded as much to the district court when it argued that the variance resulted from a scrivener's error in the indictment itself. (R. 185, Tr. Trial, Vol. IV, 145-46; R. 236.) Nevertheless, Boyd has not argued that he suffered prejudice from the variance but rather that the variance crossed the "blurry" line into a constructive amendment of the indictment.

We disagree. Boyd has not demonstrated a substantial likelihood that the jury convicted him of an offense other than the wire fraud offenses charged in counts 29 and 32. First, this is not a case where "the presentation of evidence and jury instructions modif[ied] essential elements of the

offense" of wire fraud. The variance did not add to the elements of the wire fraud offense or eliminate other elements. The proof at trial simply did not show that the particular wire transfers originated in the state of Michigan as charged.

Second, Boyd has not demonstrated that "the difference between the indictment and the jury instructions allowed the defendant to be convicted on the basis of different behavior than that alleged in the original indictment." The variance in this case did not infringe Boyd's right to know of the charges against him nor "effectively allow[] the jury to convict [him] of a different crime than that for which he was charged." *Beasley*, 583 F.3d at 389 (quotation omitted). The indictment specified that the wire transfer charged in count 29 occurred on May 7, 2003, and involved the transfer of $77,810.82 to the Stewart Title Company for the subject property at 788 Gilbert Street. Likewise, the indictment alleged that the wire transfer charged in count 32 took place on August 19, 2003, and involved the transfer of $60,878.05 to the Arlington Title Company for the subject property at 228 E. Hinman Avenue. Even though there was no proof at trial that the wire transfers alleged in counts 29 and 32 originated in Michigan, there was evidence of the date, amount, and recipient of these wire transfers as well as the address of the property on which the transaction was based. Most importantly, it is undisputed that the wire transfers at issue crossed state lines. In light of the specificity of the charges and the proof at trial, we find that Boyd's right to know of the charges set out in counts 29 and 32 was not infringed and that the variance did not permit the jury to convict Boyd of different crimes than those for which he was charged in these counts.

Furthermore, the district court's jury instruction on the wire fraud counts did not constructively amend counts 29 and 32. Boyd contends that the district court's instruction allowed

the jury to find guilt based on any interstate wire transfer rather than only on the interstate transfers between Michigan and Ohio alleged in counts 29 and 32. In its charge to the jury, the district court explained counts 29 and 32 as follows: "Count 29 charges that on or about May 7, 2003, $77,810.82 was wired in interstate commerce to Stewart Title Company, in relation to a transaction involving real estate located at 788 Gilbert Street [and that] Count 32 charges that on or about August 19, 2003, $60,878.05 was wired in interstate commerce to Arlington Title Company, in relation to a transaction involving real estate located at 288 East Hinman Avenue." (R. 187, Tr. Trial, Vol. VI, 273-74.) With respect to the interstate element, the district court instructed the jury that it could only convict Boyd if it found that Boyd "used wire, radio or television communications or caused another to use wire, radio or television communications in interstate commerce in furtherance of the scheme" and that "interstate commerce includes wire, radio or television communications which cross a state line." (*Id*. at 274-75.)

The district court's instruction tracked Sixth Circuit Pattern Jury Instruction 10.02 and was not erroneous. The essential element of the offense of wire fraud at issue here is that the communication must "cross a state line." The evidence in this case showed the wire transfers detailed in counts 29 and 32 did exactly that. Proof that the wire communication originated in a state other than the state alleged in the indictment amounts only to a variance and did not affect Boyd's ability to defend himself against the charges in counts 29 and 32. *See also United States v. Warren*, 66 F.3d 327, 1995 WL 555290, at *8 (6th Cir. 1995) (unpublished table decision) (holding that variance between indictment alleging wire transfer from Tennessee to Kentucky and proof that wire transfer was from Kentucky to Missouri was not prejudicial). Therefore, we hold that a constructive

amendment of the indictment did not occur in this case. Without further proof that the variance "affected some substantial right," the variance does not warrant vacating Boyd's wire fraud convictions on counts 29 and 32. The district court did not err in denying this part of Boyd's motion for a new trial.

**B.       In-Court Identification**

Boyd's second argument on appeal is that the trial court erred in denying his motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. According to Boyd, no witness ever directly identified him in-court as the perpetrator of the crimes charged in the indictment. For example, Dravis testified that she knew Jonathan Boyd and that he was present in the courtroom without directly identifying Boyd. The government failed to obtain in-court identification from other witnesses as well. Boyd contends then that the government did not prove all of the elements of the offenses against him.

We review the district court's denial of a motion for judgment of acquittal pursuant to Rule 29 de novo and consider the evidence "in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Wettstain*, 618 F.3d at 583 (quoting *United States v. Campbell,* 549 F.3d 364, 374 (6th Cir. 2008)). "We will reverse a judgment based on a finding of insufficient evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole." *Id.* (quotation omitted). In conducting our analysis of the evidence, we will make "all reasonable inferences in support of the jury's verdict." *Id.*

It is well-settled that an essential element that the government must prove beyond a reasonable doubt is the identification of a defendant as the person who perpetrated the crime charged. *United States v. Green,* 757 F.2d 116, 119 (7th Cir. 1985); *United States v. Doherty*, 867 F.2d 47, 67 (1st Cir. 1989); *United States v. Alexander,* 48 F.3d 1477, 1490 (9th Cir.), *cert. denied,* 516 U.S. 878, 116 S. Ct. 210, 133 L. Ed. 2d 142 (1995). It is equally well-established that identification can be inferred from circumstantial evidence; therefore, direct, in-court identification is not required. *United States v. Leek*, 78 F.3d 585, 1996 WL 99811, at *6-7 (6th Cir. 1996) (unpublished table decision) ("[In-court identification is not essential so long as the identity of the accused has been proved by adequate circumstantial evidence."); *Alexander*, 48 F.3d at 1490; *United States v. Morrow,* 925 F.2d 779, 781 (4th Cir. 1991); *United States v. Capozzi*, 883 F.2d 608, 617 (8th Cir. 1989); *United States v. Cooper*, 733 F.2d 91, 92 (11th Cir. 1984); *United States v. Weed,* 689 F.2d 752, 754 (7th Cir. 1982); *United States v. Darrell,* 629 F.2d 1089, 1091 (5th Cir. 1980) ("[A] witness need not physically point out a defendant so long as the evidence is sufficient to permit the inference that the person on trial was the person who committed the crime."). For example, the fact that the defendant has the same name as the person charged in the indictment and enters into evidentiary stipulations presented to the jury may create an inference of identification. *See Doherty,* 867 F.2d at 67. Or a jury may infer identification from the failure of witnesses who observe a defendant in the courtroom to deny the defendant's identity. *Id.*; *Weed,* 689 F.2d at 755. Evidence that defense counsel himself identifies the defendant at trial may also imply identification. *Alexander*, 28 F.3d at 1490 (citation omitted).

Viewing the evidence in the light most favorable to the government and making all inferences in support of the jury's verdict, there was sufficient circumstantial evidence to identify Boyd as the perpetrator of the crimes charged. Boyd's argument to the contrary, the government was not required to present direct, in-court identification of Boyd. Moreover, there was ample circumstantial evidence from which the jury could infer Boyd's identification. None of the witnesses called to testify against Boyd ever suggested that the wrong man was on trial. Dravis testified that she knew Jonathan Boyd and that he was present in the courtroom. (R. 183, Tr. Trial, Vol. II, Dravis, p. 98.) Aaron Spraggins testified that he had known Jonathan Boyd since childhood. (R. 184, Tr. Trial, Vol. III, Spraggins, p. 97.) Furthermore, Boyd never objected to the United States' repeated references to him as the defendant named in the indictment. Keith Summers, the owner of Summertyme Mortgage and Boyd's employer, was asked "are you familiar with Jonathan Boyd the defendant here in this case?" to which Summers replied that he was. (R. 184, Tr. Trial, Vol. III, Summers, p. 33.) The government posed similar questions concerning "Jonathan Boyd, the defendant here" to Abby Woycitzky-Fisher (R. 184, Tr. Trial, Vol. III, Woycitzky, pp. 149) and Donald Green (R. 184, Tr. Trial, Vol. III, Green, p. 186), both of whom testified about their acquaintance with Boyd. It is further undisputed that Boyd stipulated to the authenticity of many documents including banking records and mortgage paperwork related to the properties described in the indictment. Finally, Boyd's attorney identified his client as Jonathan Boyd to the jury and never objected to the government's repeated references to "Jonathan Boyd the defendant here" nor did the defense challenge witnesses on cross-examination whose testimony implied that the man seated at counsel's table was, in fact, the Jonathan Boyd with whom they had dealings. Based on the course of the trial

proceedings, the jury had sufficient circumstantial evidence to identify Boyd as the defendant named in the indictment. Therefore, Boyd has not shown that the district court erred in denying his Rule 29 motion for lack of in-court identification.

For all of these reasons, we **AFFIRM** the judgment of the district court.