[Cite as *State v. Blankenship*, 2017-Ohio-7267.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 16 CAA 0024 |
| JAMES BLANKENSHIP | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Criminal appeal from the Delaware County
Court of Common Pleas, Case No. 15CR-I-
070327

JUDGMENT: Affirmed in part; Reversed and Remanded
in part

DATE OF JUDGMENT ENTRY: August 16, 2017

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

CAROL HAMILTON O'BRIEN          TODD WORKMAN
DOUGLAS DUMOLT                        Workman Law Office
Delaware County Prosecutor's office    P.O. Box 687
140 North Sandusky Street, 3rd Fl.       Delaware, OH 43015
Delaware, OH 43015

*Gwin, P.J.*

{¶1} Defendant-appellant James Blankenship ["Blankenship"] appeals his conviction and sentence entered by the Delaware County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.

*Facts and Procedural History*

{¶2} Beginning in January of 2015, law enforcement in the northern Central Ohio area began receiving reports of break-ins in county animal shelters and humane societies. The first break-in occurred on January 9, 2015 in Morrow County and the second occurred on January 12, 2015 in Marion County. The third and fourth break-ins occurred on the night on January 19, 2015 in Union and Logan Counties. The fifth break-in occurred on February 1, 2015 in Knox County. The sixth break-in occurred on February 4, 2015 in Ashland County. The seventh break-in occurred on February 10, 2015 in Delaware County. The eighth and ninth break-ins occurred on February 13, 2015 in Hardin and Seneca Counties. On February 15, 2015, the tenth, eleventh and twelfth break-ins occurred in Medina, Wayne, and Huron Counties. On February 16, 2015, the thirteenth and fourteenth break-ins occurred in Champaign and Madison Counties. On February 17, 2015, the fifteenth break-in occurred in Muskingum County. Finally, on February 18, 2015 the sixteenth break-in occurred in Hardin County.

{¶3} On February 19, 2015, Detective Viloria from the Ashland County Sheriff's office sent out a LEADS teletype directed to law enforcement agencies around Ohio attempting to find out if humane societies or dog shelters in other jurisdictions were aware of similar break-ins. Detective Marissa Gibson of the Morrow County Sheriff's Office contacted Detective Viloria to advise her that a similar break in had recently occurred in

Morrow County.  Detective Gibson learned that sixteen counties had experienced similar break-ins of their humane societies since January 3.  Based upon the number of counties affected within such a short time, a meeting was scheduled to discuss the cases and share information.

{¶4}  At that meeting, law enforcement from around Ohio shared video footage and still images from a number of the establishments that employed video surveillance security systems.  From that footage and initial investigation, the police were able to identify a suspect vehicle.  Detective Brian Beach had received a license plate number and a car make and model from Patrolman Taylor of the Kenton Police Department.  (2 T. at 401).  Detective Beach relayed that information to Detective Gibson.  (2T. at 403).  Using that information, Detective Gibson began conducting surveillance of Blankenship's residence and discovered that the license plate they were looking for had been transferred to a white Pontiac at his residence.  The white Pontiac had been observed in surveillance footage from a break-in that occurred in Huron County.

{¶5}  After Detective Gibson developed Blankenship as a possible suspect, she obtained his phone number from his probation officer who worked for Morrow County Adult Court Services.  She provided that phone number to Detective Beach of the Kenton Police department who was responsible for obtaining cellular phone records which might show the location of Blankenship's phone at times near when the break-ins had been occurring.  Ultimately, these records showed Blankenship's phone present in the same geographic area as a number of the humane societies around the time at which the break-ins occurred.

{¶6}   Toni Beers and Corby Creech were also viewed as potential suspects at that time because they lived with Blankenship, were dating each other, and because the license plate that had been identified in this case was registered to Toni Beers.  Corby Creech was apprehended attempting to break into a car wash on February 28, 2015 by the Bucyrus Police Department.  At that time, he was found to be wearing a pair of boots with similar tread pattern to what had been observed at a number of the humane society break-ins; moreover, he had distinctive orange walkie-talkie on his person that had been observed on video surveillance during the Knox County Animal Shelter break-in.

{¶7}   When Corby Creech was taken into custody, various Detectives from around the state interviewed him.  Creech explained that he and Blankenship would travel around Ohio and break into humane societies and animal shelters looking for money, safes, or other items worth stealing.  He initially denied involvement in many of the break-ins but admitted involvement in others.  He explained that neither he nor Blankenship were working and broke into these shelters to buy drugs and to support themselves.

{¶8}   On July 24, 2015, Blankenship was indicted on fourteen counts - Count One, Engaging in a Pattern of Corrupt Activity R.C. 2923.32(A)(1); Count Two, Breaking and Entering in violation of R.C. 2911.13(A); Count Three, Safecracking in violation of R.C. 2911.31(A); Count Four, Breaking and Entering in violation of R.C. 2911.13(A); Count Five, Breaking and Entering in violation of R.C. 2911.13(A); Count Six, Safecracking in violation of R.C. 2911.31(A); Count Seven, Breaking and Entering in violation of R.C. 2911.13(A); Count Eight, Breaking and Entering in violation of R.C. 2911.13(A); Count Nine, Breaking and Entering in violation of R.C. 2911.13(A); Count Ten, Safecracking in violation of R.C. 2911.31(A); Count Eleven, Breaking and Entering

in violation of R.C. 2911.13(A); Count Twelve, Breaking and Entering in violation of R.C. 2911.13(A); Count Thirteen, Breaking and Entering in violation of R.C. 2911.13(A); Count Fourteen, Breaking and Entering in violation of R.C. 2911.13(A).

{¶9} The jury trial commenced on April 25, 2016. Prior to the start of trial, the state dismissed Count Fourteen. At the conclusion of the state's case, the court granted Blankenship's Criminal Rule 29 motion to dismiss Count Thirteen of the Indictment. The jury later returned a verdict of guilty on all twelve remaining charges.

{¶10} On May 2, 2016, Blankenship appeared before the court for purposes of sentencing. Blankenship was ordered to serve a seven year prison sentence on Count One; a 12 month prison sentence on Count Two; an 18 month prison sentence on Count Three; an 18 month prison sentence on Count Four; a 12 month prison sentence on Count Five; an 18 month prison sentence on Count Six; a 12 month prison sentence on Seven; a 12 month prison sentence on Count Eight; a 12 month prison sentence on Count Nine; an 18 month prison sentence on Count Ten; a 12 month prison sentence on Count Eleven; and, a 12 month prison sentence on Count Twelve. Counts One, Two, and Three were all ordered to be served consecutive to each other for an accumulated sentence of nine and one-half years in prison. The remaining seven counts were all concurrent to Counts One, Two, and Three.

{¶11} On July 18, 2015, this Court granted Blankenship leave to file his delayed appeal.

*Assignments of Error*

{¶12} Blankenship presents four assignments of error for our consideration,

{¶13} "I. THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO OHIO RULES OF CRIMINAL PROCEDURE RULE 29 WHEN THE STATE FAILED TO PROVIDE SUFFICIENT EVIDENCE TO SUPPORT THE VERDICT.

{¶14} "II. THE DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶15} "III. THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO OHIO RULES OF CRIMINAL PROCEDURE RULE 29 WHEN THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE CRIMINAL CONDUCT (OR ANY PART THEREOF) WAS COMMITTED IN DELAWARE COUNTY.

{¶16} "IV. APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED WHEN THE COURT FAILED TO PROPERLY INFORM HIM OF THE DETAILS OF POST-RELEASE CONTROL AT THE TIME OF SENTENCING AND WHEN THE COURT FAILED TO PROPERLY INCORPORATE THE TERMS OF POST-RELEASE CONTROL INTO THE SENTENCING."

I & II.

*Introduction.*

{¶17} In his First, Second and Third Assignments of Error, Blankenship challenges only his conviction on Count VII of the Indictment. Count VII of the Indictment provided,

Count Seven:

THE JURORS OF THE GRAND JURY of the State of Ohio, within and for the body of the County of Delaware, on their oaths, in the name and by the authority of the State of Ohio, do find and present that on or about the 10th day of February, 2015 in Delaware County, Ohio, or by some manner enumerated in Section 2901.12 of the Ohio Revised Code whereby proper venue is placed in Delaware County, Ohio, JAMES BLANKENSHIP AND CORBY CREECH, by force, stealth, or deception, did trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in Section 2913.01 of the Revised Code, or any felony, this being Breaking And Entering in violation of Section 2911.13(A) of the Ohio Revised Code, a Fifth Degree Felony and against the peace and dignity of the State of Ohio.

**{¶18}** In response to Blankenship's request, the state provided the following information in the Bill of Particulars filed February 4, 2016,

Count 7: (Delaware County)

On February 10, 2015, the defendant, in conjunction with Corby Creech, in a continuing course of criminal conduct, did, by force, stealth, or deception, trespass in an unoccupied structure, 4920 State Route 37 E, Delaware, OH 43015, with the purpose to commit a theft offense therein.

*Blankenship's contentions.*

**{¶19}** In his First Assignment of Error, Blankenship alleges that the trial court erred in not granting his Crim. R. 29 motion for acquittal on Count VII of the Indictment at the conclusion of the state's case. In determining whether a trial court erred in overruling an

appellant's motion for judgment of acquittal, the reviewing court focuses on the sufficiency of the evidence. *See, e.g., State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965, 974(1995); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492(1991).

{¶20} In his Second Assignment of Error, Blankenship argues that his conviction for Count VII of the Indictment is against the weight of the evidence.

{¶21} Blankenship argues that there is no evidence that he "or any other individual associated with Appellant (under the State's argument of Engaging in Criminal Activity)committed a Breaking and Entering in regards to Count Seven of the Indictment(Allegedly occurring at the Delaware County Humane Society) there is absolutely zero evidence of this." [Appellant's Brief at 11].

*Standard of Review.*

{¶22} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

{¶23} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), superseded by constitutional amendment on other grounds as stated by *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of

the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed. 1990) at 1594.

**{¶24}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721 (1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

\* \* \*

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

{¶25} *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶26} To be convicted of breaking and entering pursuant to R.C. 2911.13(A) the trier of fact would have to find beyond a reasonable doubt that Blankenship by force, stealth, or deception trespassed in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony.

{¶27} On February 10, 2015, Deputy Robert Curren responded to the Delaware County Humane Society at approximately 1:16 a.m. A loud, audible alarm had been tripped. He had been dispatched when the Vector alarm company called to report a possible break-in at that location. Upon his arrival, he located a door that had pry marks and evidence of forcible entry. Part of the dead bolt was lying on the ground and the door was ajar. Deputy Curren walked through the business, took photographs of the damage, and made contact with the key holder Misty Bay.

{¶28} Ms. Bay testified that she was a manager at the Delaware County Humane Society. After she received a call regarding a suspected break-in from Vector security, she went to the location. She arrived approximately twenty-five minutes after the alarm.

After Deputy Curren cleared the building, she walked through and discovered that the east wing cat door had been broken. She discovered that some file cabinets and drawers had been pulled out in the lobby, two of the dogs were not in their kennels and a set of keys were not on the hook where they were customarily located.

{¶29} Ms. Bay testified that it appeared someone had forced entry, searched the building, and moved property. Ms. Bay testified that she ultimately found nothing to be missing. Ms. Bay testified there were motion sensors inside the business. She was able to determine that the suspects entered through the east wing door, then moved throughout the shelter, and ultimately exited through the dog room door. She testified the damage present on the doors was not present prior to the break-in. She was further able to tell by the timing of the security codes that the suspects were only in the shelter for perhaps five minutes. Finally, she testified no one had authority to enter the shelter on the date in question and no one had permission to cause the damage.

{¶30} A witness need not physically point out the defendant in the courtroom as long as there is sufficient direct or circumstantial evidence proving that the defendant was the perpetrator. *See, State v. Jenks*, 61 Ohio St.3d 259, 272–273, 574 N.E.2d 492 (1991); *United States v. Boyd*, 447 Fed.Appx. 684, 690 (6th Cir. 2011) (collecting examples of when "in-court identification is not required").

{¶31} Circumstantial evidence is defined as 'testimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved.'" *State v. Nicely,* 39 Ohio St.3d 147, 150, 529 N.E.2d 1236 (1988), *quoting* Black's Law Dictionary 221 (5th Ed.1979). "Circumstantial evidence and direct evidence inherently possess the

same probative value." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus. "'[C]ircumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. McKnight*, 107 Ohio St.3d 101, 2005–Ohio–6046, 837 N.E.2d 315, ¶ 75, *quoting State v. Heinish*, 50 Ohio St.3d 231, 238, 553 N.E.2d 1026 (1990).

{¶32} "For other-acts evidence to be admissible to prove identity, the 'other-acts evidence must be related to and share common features with the crime in question.'" *State v. Massey*, 10th Dist. No. 99AP–1355, 2000 WL 1742072 (Nov. 28, 2000), *quoting State v. Lowe*, 69 Ohio St.3d 527, 634 N.E.2d 616 (1994), paragraph one of the syllabus. Evidence of other acts is admissible to prove identity if there is "substantial proof that the alleged other acts were committed by the defendant." *Lowe* at 530, 634 N.E.2d 616. *See also State v. Parnell,* 10th Dist. No. 11AP–257, 2011-Ohio-6564, 2011 WL 6647293, ¶ 31. Also, Evid.R. 404(B) provides that evidence of other crimes, wrongs, or acts is permitted to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, of the absence of mistake or accident. *State v. Kirkland*, 140 Ohio St.3d 73, 2014–Ohio–1966.

{¶33} In the case at bar, ample circumstantial evidence existed to allow the jury to conclude that Blankenship and Creech were the individuals who gained access to the Delaware County Humane Society on February 10, 2015.

{¶34} Beginning on January 19, 2015, break-ins began to occur in animal shelters and humane societies. By February 18, 2015, sixteen such establishments had been broken into in sixteen different counties in the state. Some of the premises had video

surveillance, which consistently showed two males with their faces covered inside the buildings. In some pictures, a white car similar to Blankenship's could be seen in the vicinity. Either Blankenship's or Creech's cell phones were determined to be in the vicinity at the time of approximately eight of the break-ins. Creech was in possession of an orange walkie-talkie at the time of his arrest. Creech testified that they tried using the walkie-talkies to communicate with the driver during the break-ins. (T. at 696). Surveillance footage from the Knox County break-in showed a suspect with an orange walkie-talkie. (1T. at 99).

{¶35} Toni Beers testified that she was Creech's girlfriend and the couple lived with Blankenship during the time that the break-ins were occurring. Neither Beers, Creech, nor Blankenship was working at the time. However, Blankenship and Creech would pay the bills. Blankenship and Creech would leave the residence around 9:00 p.m. and return around 3:00 a.m. on many days. In exchange for a guarantee of immunity from prosecution by the state, Beers testified that on several days she went with them. Blankenship and Creech would break in to humane society buildings. That was the only type of business they broke into while she was present. She would drive them to various humane societies in Blankenship's white Grand Prix on some occasions, drop them off, and pick them up after the commission of the offense. When they signaled her to pick them up, they would often have money, medication, and pills.

{¶36} Beers testified that they were living in Morrow County at the time of the offense and hit pretty much all of the adjoining counties around Morrow County at some point. While Ms. Beers was able to specifically recall driving Blankenship and Creech to the Ashland County and Marion County animal shelters, she could not recall all of the

others.  Finally, she testified she went out with Creech and Blankenship approximately five to seven times, but Creech and Blankenship went out "a lot" without her to break into businesses.

{¶37} Similarly, Creech testified that he was charged, pled guilty, and was sentenced by Delaware County for his involvement in this case.  He testified to breaking into dog pounds and car washes during the relevant period.  The following exchange took place during Blankenship's jury trial between the prosecutor and Creech,

Q.	Let's talk about your Delaware case here then if we can.  What did you do that caused you to get charged with a number of offenses in that case?

A.	Breaking into dog pounds and car washes.

Q.	Okay.  And were dog shelters and dog pounds and car washes the only places you broke into during that time?

A.	Yes.

Q.	Do you recall some of the counties that you broke into businesses in?

A.	Hardin County, Morrow County, Marion County.  I did Delaware County.

4T. at 684-685.  Further, Creech testified,

Q.	And what did you go to prison for?

A.	I went to prison out of Morrow County for burglary and Delaware County breaking and entering.

4T. at 683. Creech testified that after they had tried the break-in in Morrow County he and Blankenship decided to keep going. (4T. at 687-688). They began to drive further outward in search of dog shelters to break-in. Creech testified that Toni Beers would accompany him and Blankenship to break-ins on occasion. Creech testified that he and Blankenship broke into the Hardin County animal shelter and stole a dog during the process because Blankenship wanted the animal. (4T. at 690). Creech plead guilty to the break-in of the Delaware County Humane Society. (See, State's Exhibit 20; 4T. at 701).

{¶38} In the case at bar, the break-ins involved a unique type of establishment. They further occurred over a short period. Each offense involved a similar modus operandi. Creech and Beers each admitted to committing a number of the break-ins and were unsure as to others. Corroborating evidence as to the identity of the perpetrators was presented in the form of cellular telephone records that pinpointed the location of Blankenship and Creech near the location of several of the break-ins at or near the time of the break-in. Identification of a vehicle matching the description of Blankenship's car at several of the sites was presented. Two humane societies in different counties were broken into on January 19, 2015. Two more in different counties were broken into on the same night on February 13, 2015. Three humane societies in different counties were broken into on February 15, 2015. Two humane societies in two different counties were broken into on February 16, 2015. The break-ins of humane society's and animal shelters appear to have stopped with the arrest of Creech and Blankenship. From this evidence, the jury could find proof of motive, opportunity, intent, preparation, plan, knowledge, and identity were the same or similar for all of the break-ins.

{¶39} Competent, credible evidence was presented when viewed in the light most favorable to the prosecution, that provides sufficient circumstantial evidence that Blankenship was a participant in the break-in of the Delaware County Humane Society on February 10, 2015. We hold, therefore, that the state met its burden of production regarding each element of the crime of breaking and entering and, accordingly, there was sufficient evidence to support Blankenship's conviction on Count VII of the Indictment.[1]

{¶40} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown*, 9th

---

[1] Appellant does not challenge his convictions on any other count upon which the jury returned a guilty verdict.

Dist. No. 21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass*, 10 Ohio St .2d 230, 227 N.E.2d 212(1967).

**{¶41}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

**{¶42}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶43}** Although Creech testified at trial that he did not believe he had committed the break-in of the Delaware County Humane Society, the jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. The jury was also aware that Creech had pled guilty to the break-in of the Delaware County Humane Society. "While the jury may take note of the

inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks, supra.*

{¶44} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Blankenship of the charge.

{¶45} Based upon the foregoing and the entire record in this matter, we find Blankenship's conviction on Count VII of the Indictment was not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony of the state's witnesses and Blankenship and his witnesses. This court will not disturb the jury's finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208,

378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Blankenship's guilt.

{¶46} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime beyond a reasonable doubt.

{¶47} Blankenship's First and Second Assignments of Error are overruled.

III.

{¶48} Because there is no evidence to connect Blankenship to the Delaware County break-in, Blankenship posits in his Third Assignment of Error that it was improper to conduct the jury trial on his Indictment in Delaware County.

{¶49} Section 10 of Article I of the Ohio Constitution requires that: "* * * [i]n any trial, in any court, the party accused shall be allowed * * * a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed * * *." Crim.R. 18(A) states that, "(t)he venue of a criminal case shall be as provided by law."

{¶50} "Venue is not a material element of any offense charged. The elements of the offense charged and the venue of the matter are separate and distinct. *State v. Loucks* (1971), 28 Ohio App.2d 77, 274 N.E.2d 773, and *Carbo v. United States* (C.A.9, 1963), 314 F.2d 718. Yet, in all criminal prosecutions, venue is a fact that must be proved at trial unless waived. *State v. Nevius* (1947), 147 Ohio St. 263, 71 N.E.2d 258." *State v. Draggo,* 65 Ohio St.2d 88, 90, 418 N.E.2d 1343, 1345(1981).

{¶51} R.C. 2901.12 contains the statutory foundation for venue. The relevant provisions of this section read, in pertinent part, as follows:

(A) The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed.

* * *

(D) When the offense is conspiracy, attempt, or complicity cognizable under division (A) (2) of section 2901.11 of the Revised Code, the offender may be tried in any jurisdiction in which the conspiracy, attempt, complicity, or any of its elements occurred.

(E) When the offense is conspiracy or attempt cognizable under division (A)(3) of section 2901.11 of the Revised Code, the offender may be tried in any jurisdiction in which the offense that was the object of the conspiracy or attempt, or any element of that offense, was intended to or could have taken place.  When the offense is complicity cognizable under division (A) (3) of section 2901.11 of the Revised Code, the offender may be tried in any jurisdiction in which the principal offender may be tried.

* * *

(G) When it appears beyond a reasonable doubt that an offense or any element of an offense was committed in any of two or more jurisdictions, but it cannot reasonably be determined in which jurisdiction the offense or element was committed, the offender may be tried in any of those jurisdictions.

(H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all

of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred* * *

**{¶52}** As we have found in our disposition of Blankenship's First and Second Assignments of Error, sufficient, credible evidence supports Blankenship's conviction on Count VII of the Indictment. As Blankenship was convicted of breaking-in to the Delaware County Humane Society, venue for purposes of Blankenship's jury trial was proper.

**{¶53}** Blankenship's Third Assignment of Error is overruled.

IV.

**{¶54}** In his fourth assignment of error Blankenship asserts that the trial court erred by failing to notify him at his sentencing hearing that his sentence included the mandatory three-year term of post-release control and that the court failed to incorporate that notice in its sentencing entry.

**{¶55}** Blankenship was convicted of multiple felonies, the most serious of which is Count I of the Indictment, Engaging in a Pattern of Corrupt Activity. That offense is a second-degree felony. R.C. 2923.32(B)(1). R.C. 2967.28(B)(2) mandates a mandatory three-year period of post-release control be imposed upon a conviction for a second-degree felony.

**{¶56}** In cases where, as here, an offender is subject to multiple periods of post-release control, "the period of post-release control for all of the sentences shall be the period of post-release control that expires last, as determined by the parole board or court. Periods of post-release control shall be served concurrently and shall not be imposed consecutively to each other." R.C. 2967.28(F)(4)(c). Thus, in multiple-offense cases, the sentencing court need only notify the defendant of the longest applicable period of post-

release control. *State v. Darks,* 10th Dist. Franklin No. 12AP-578, 2013-Ohio-176, ¶11; *State v. Reed*, 6th Dist. No. E–11–049, 2012–Ohio–5983, ¶ 12; *State v. Buckner,* 1st Dist. No. C–100666, 2011–Ohio–4358, ¶ 18; *State v. Ballou*, 8th Dist. No. 95733, 2011–Ohio–2925, ¶ 16, *citing Durain v. Sheldon*, 122 Ohio St.3d 582, 913 N.E.2d 442, 2009–Ohio-4082, ¶ 1.

**{¶57}** Blankenship was not informed at the sentencing hearing or in the court's judgment entry that he is subject to a mandatory three-year period of post release control.

**{¶58}** Blankenship's Fourth Assignment of Error is sustained.

**{¶59}** For the foregoing reasons, Blankenship's convictions and sentence are affirmed. However, we vacate the post release control portion of Blankenship's sentence and remand the matter for a hearing limited to the proper imposition of post release control.

By Gwin, P.J.,

Wise, John, J., and

Wise, Earle, J., concur